[No. B212183. Second Dist., Div. Four. Apr. 9, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
RAMON BOTELLO et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts I.A., I.C., II., III., IV., V. and VI. of the Discussion.

## COUNSEL

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant Ramon Botello.

Marilee Marshall & Associates and Marilee Marshall for Defendant and Appellant Jesus Botello.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, James William Bilderback II and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WILLHITE, Acting P. J.**—A jury convicted defendants Ramon Botello and Jesus Botello of two counts of attempted willful, deliberate, and premeditated murder (Pen. Code, §§ 664, 187, subd. (a)),[1] finding that the crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)), and also convicted them of one count of shooting at an inhabited dwelling (§ 246). The jury found, among other firearm enhancements (§§ 12022.53, subds. (b) & (c), 12022.5), that in each crime both defendants personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)). The trial court sentenced both defendants to state prison for a term of 80 years to life.

In their appeals from their respective judgments of conviction, defendants contend[2] (1) the evidence was insufficient to support the convictions, the firearm enhancement findings, and the gang enhancement finding; (2) the trial court violated their due process rights by disallowing the testimony of a

---

[1] All undesignated section references are to the Penal Code.

[2] Defendants join in each other's contentions. Rather than identify which defendant actually makes each contention, we simply attribute the contentions to both.

defense witness who remained in the courtroom in violation of a witness exclusion order; (3) the court abused its discretion in imposing consecutive sentences on the attempted murder counts, believing it had no discretion to sentence concurrently, and erred in not staying the sentence on the shooting at an inhabited dwelling count; and (4) trial counsel was ineffective for failing to object to expert testimony concerning the Mexican Mafia.

In the published portion of the opinion, we hold that the evidence was insufficient to support the charged firearm enhancements. We also reject respondent's contention that the firearm findings under section 12022.53, subdivisions (b), (c), and (d) can be saved by applying, for the first time on appeal, the uncharged provision of section 12022.53, subdivision (e)(1). Rather, under the reasoning of *People v. Mancebo* (2002) 27 Cal.4th 735 [117 Cal.Rptr.2d 550, 41 P.3d 556] (*Mancebo*) and *People v. Arias* (2010) 182 Cal.App.4th 1009 [105 Cal.Rptr.3d 887] (*Arias*), we conclude that applying section 12022.53, subdivision (e)(1), which was not charged, would violate the language of that subdivision (which requires that it be pled) and the notice requirement of due process. We also conclude that by its failure to plead subdivision (e)(1), failure to ensure jury findings under that subdivision, failure to raise the provision at sentencing, and obtaining a sentence that in fact violated subdivision (e)(1), the prosecution forfeited its right to rely on that subdivision.

In the unpublished portion of the opinion, we conclude that the court erroneously believed that it had no discretion to sentence concurrently on the attempted murder counts. We therefore remand for resentencing. We disagree with defendants' remaining contentions and affirm the judgment as modified.

## BACKGROUND

*Prosecution Evidence*

1. *The Crime*

On November 10, 2007, around 8:45 p.m., Steven Guzman, a T-Flats gang member, was standing on the sidewalk of Arthur Avenue in the City of Paramount drinking beer with another T-Flats gang member, Fernando Hernandez. Guzman grew up in the same neighborhood as defendants, who are identical twins. In April 2007, defendants had admitted to Los Angeles County Deputy Sheriff Pasqual Delgadillo that they belonged to the Paramount Locos gang. Also, other evidence (discussed below) tied them to the gang.

That evening Guzman saw defendants in a car that pulled into a driveway that led to several houses, including the home where Kevin Deanda and his mother Bertha lived. Defendants joined a group of about 10 to 15 Hispanic teenagers gathered near the Deanda home. Kevin Deanda identified defendants as being among the group. To Bertha Deanda, the group looked like "gangsters," and she yelled at them to leave.

The group left in three cars. As the first car to leave passed Guzman and Hernandez, one of the occupants, a Paramount Locos gang member known as Smokey, raised his middle finger at Hernandez. Hernandez returned the gesture, and he and Guzman exchanged gang signs with Smokey. The second car left, followed by the third car.

In the third car were several people. Guzman recognized defendants seated in the driver's and front passenger seats.[3] Because defendants are identical twins, Guzman could not distinguish between them. Hernandez flashed the T-Flats gang sign at the car. The car passed in front of Guzman and Hernandez and stopped just past a truck parked at the curb. Guzman saw the front passenger (one of the defendants, but Guzman could not distinguish which) pull out a rifle and begin shooting. Guzman heard about five or six shots, and was pulled to the ground by Hernandez. Hernandez yelled that he had been shot. The car drove off.

The Deandas' neighbor, Laura Ramon, heard two or three gunshots and the sound of breaking glass. Two bullets passed through the window next to which she was standing and struck a wall inside. One bullet passed through the wall and struck her child's bunk bed.

Hernandez suffered a bullet wound in the right hip. He was taken to the hospital.

### 2. Gang Evidence

According to Los Angeles County Sheriff's Detective Stacy Morgan, she was assigned to monitor the Paramount Locos gang. She first learned of the gang in April 2007, when deputies were called to a trailer park regarding a juvenile disturbance call. Since then, she had had indepth conversations with

---

[3] At the preliminary hearing, Guzman testified that he did not see the shooter and denied having identified defendants. At trial, he testified that he lied at the preliminary hearing because he was trying not to be a snitch.

approximately 10 Paramount Locos gang members, had served search warrants on Paramount Locos locations, and had had various conversations with patrol deputies regarding their contact with Paramount Locos members.

Based on interviews, she learned that the gang was formed by young skateboarders who used the skate parks in the city and had been victimized by other gangs. The skaters formed the Paramount Locos gang to protect themselves. It has 20 to 25 members and identifies itself with a hand sign forming the letters "PLC." The gang was attempting to affiliate itself with "La Ema." Latino gangs in California are generally divided into the "North Siders" north of Fresno and the "South Siders," or "Surenos," south of Fresno. The Surenos are controlled by La Ema, which collects taxes from its affiliated gangs. When smaller gangs are accepted by La Ema, they become associated with the number 13, which symbolizes the letter "M," the 13th letter of the alphabet. To earn "13 status," the gang commits crimes in a particular area so as to exert its control.

The Paramount Locos gang became noticed because it began targeting several more established gangs in the City of Paramount, committing "shootings and assaults of that type." Seeking to control Paramount, the Paramount Locos gang was a rival of all larger gangs in the area, including T-Flats.

Asked about the primary activities of the Paramount Locos, Detective Morgan testified: "Well most of the crimes, starting off when the gangs were immature, do [sic] smaller crimes: petty theft, vehicle theft, those are typical smaller crimes gangs commit. But it quickly matured to crimes such as assault with a deadly weapon and murder."

Defendants belonged to the Paramount Locos, and went by the monikers "Nesio" and "Vago." From their residence in Bakersfield, several items, including binders and a hardcover journal, were recovered that contained Paramount Locos graffiti. The binder referred to the twins, contained a gang pledge to "South Side" and referred to "one nation under 13." Seized photographs showed defendants and other Paramount Locos gang members making gang hand signs. Defendant Ramon Botello had a "P" tattoo on his right bicep signifying the Paramount Locos. Also, material seized from the residence of another Paramount Locos member, Frank Anguiano ("Sharky") had a roster of Paramount Locos members that listed defendants.

Detective Morgan testified that defendants committed the shooting for the benefit of the Paramount Locos gang. Because Hernandez was a member of a rival gang, the shooting would enhance the Paramount Locos' reputation and help the gang earn its "13" status.

*Defense Evidence*

### 1. *Jesus Botello*

Defendants' father, Ramon Rodriguez Botello (Ramon Sr.), testified that he and his family lived in Paramount from 1984 to 2004. After brief stays in Norwalk and Long Beach, they moved to Bakersfield in 2006. On the day of the shooting (Nov. 10, 2007) he and defendants worked on a house in Bakersfield that was being remodeled (Ramon Sr. was a construction worker) and returned home sometime around 4:00 or 5:00 p.m. Ramon Sr. owned only one car—an Expedition—and did not allow defendants to drive it. Defendants left the house briefly, but returned to eat dinner with the family at 6:30 or 7:00 p.m. When he went to bed at 10:00 p.m., Ramon Sr. believed his sons were still in the house.

Although he testified that he remembered the events of November 10, 2007, from an entry in a journal, the journal entry for that date actually stated: "No work. Bill didn't show up. He didn't call me. He is not answering the messages. We have absolutely nothing. Bill don't answer the phone." Ramon Sr. explained that by that entry, he meant that he had not been paid that day; the remodeling job had been paid in advance.

Naomi Henriquez, a junior high school student in Bakersfield, knew defendants and was able to distinguish between defendants' voices. Around 5:30 or 6:00 p.m. on the night of the shooting, she called defendants' home to invite their sister to a birthday party. Ramon told her to call back. Around 10:00 a.m. the next morning, Henriquez went to defendants' home, and both defendants were there. Henriquez argued with Ramon because he had not let her talk to his sister.

### 2. *Ramon Botello*

Fernando Hernandez denied that he belonged to the T-Flats gang. He testified that four Black men drove up and asked him where he was from. Hernandez said that he was not a gang member. The men told him to empty his pockets. When he refused, one of the men said, "Get the burner," which Hernandez understood to refer to a gun. Hernandez pushed Guzman and was shot as he ran away. Defendants did not participate in the shooting.

*Rebuttal*

Hernandez testified that when he was interviewed after the shooting by a deputy sheriff, he told the deputy that he was shot by Black men. However, according to Deputy Esqueda, who interviewed Hernandez at the hospital,

Hernandez refused to identify the suspects and did not mention being shot by Black men. Rather, Hernandez said that he would not be a snitch or a rat.

## DISCUSSION

I. *Sufficiency of the Evidence*

 A. *The Convictions*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

 B. *Firearm Enhancements*

 1. *Background*

 The information alleged that in the commission of the charged crimes, "defendants Jesus Botello and Ramon Botello personally and intentionally discharged a firearm, a rifle, which proximately caused great bodily injury and death to Steven Guzman [and] Fernando Hernandez within the meaning of Penal Code section 12022.53, subdivision (d)." It also alleged that both defendants "personally and intentionally discharged a firearm" under section 12022.53, subdivision (c), and that both "personally used a firearm" under section 12022.53, subdivision (b), and section 12022.5. In addition, the information alleged as to the two attempted murder counts that the crimes were committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1)(C).

 The trial court instructed the jury on the charged firearm and gang enhancements. Also, although it was not alleged in the information, the trial court instructed on an uncharged provision, section 12022.53, subdivision (e)(1), which provides: "(1) The enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if both of the following *are pled and proved*: [¶] (A) The person violated subdivision (b) of Section 186.22. [¶] (B) Any principal in the offense committed any act specified in subdivision (b), (c), or (d)." (Italics added.)

 The jury was provided with verdict forms on the charged firearm and gang enhancements, and returned true findings on those enhancements. The jury was not provided with verdict forms on the uncharged provision of section 12022.53, subdivision (e)(1), and returned no findings under that provision.

---

[*]See footnote, *ante*, page 1014.

As part of each defendant's sentence, the trial court imposed consecutive terms of 25 years to life on the two attempted murder counts under the charged enhancement of section 12022.53, subdivision (d), stayed the remaining charged firearm enhancements (§§ 12022.53, subds. (b) & (c), 12022.5), and imposed a consecutive term of 15 years to life for the gang enhancement under section 186.22, subdivision (b)(1). The court did not purport to sentence under section 12022.53, subdivision (e)(1).

### 2. *Insufficient Evidence of the Charged Firearm Enhancements*

Defendants contend that the evidence was insufficient to support the charged firearm enhancements under subdivisions (b), (c), and (d) of section 12022.53 and section 12022.5, because Guzman could not say which defendant fired. Respondent concedes that the evidence was insufficient to prove that defendants personally used or discharged a firearm, and that, therefore, the evidence does not support the firearm enhancements as charged. We agree with this concession.

### 3. *Inapplicability of Section 12022.53, Subdivision (e)(1)*

Respondent argues, however, that the firearm enhancements under section 12022.53, subdivisions (b), (c), and (d) can be upheld by applying, for the first time on appeal, the uncharged provision of section 12022.53, subdivision (e)(1). Respondent argues, in substance, that section 12022.53, subdivision (e)(1) applies because both defendants were principals (one the shooter, the other an aider and abettor), because the jury found the gang enhancement under section 186.22, subdivision (b) to be true, and because one principal, by firing a gun and wounding Hernandez, committed an act specified in section 12022.53, subdivisions (b), (c), and (d).

We conclude that two decisions—*Mancebo, supra,* 27 Cal.4th 735 and *Arias, supra,* 182 Cal.App.4th 1009—demonstrate that the application of section 12022.53, subdivision (e)(1), which was not charged, would violate the statutory language of subdivision (e)(1) and the notice requirement of due process.

*Mancebo* dealt with the interplay of the firearm use enhancement of section 12022.5 on the one hand, and the "One Strike" law, section 667.61, on the other. Section 12022.5 provides a fixed term enhancement for a defendant's personal use of a firearm. The One Strike law provides an alternative sentencing scheme for certain sex crimes committed under specified circumstances. (*Mancebo, supra,* 27 Cal.4th at p. 738.)

As relevant to *Mancebo*, section 667.61, subdivision (e), lists certain specified circumstances for invoking the One Strike sentencing scheme. The circumstances include that the defendant kidnapped the victim, personally used a firearm in violation of section 12022.5, has been convicted in the present case of committing a qualifying crime against more than one victim, and tied or bound the victim. (§ 667.61, subd. (e)(1), (4), (5) & (6).) If at least two of these circumstances apply to the current offenses, subdivision (a) provides a One Strike sentence of 25 years to life.

In *Mancebo*, the defendant was charged with various sex crimes against two victims. To obtain a 25-year-to-life sentence for one qualifying crime against each victim, the prosecution alleged two specified circumstances under section 667.61, subdivision (e): for one victim, the prosecution alleged the defendant's personal use of a firearm under section 12022.5 and his kidnapping the victim (§ 667.61, subd. (e)(1) & (4)); for the other victim, the prosecution alleged defendant's personal use of a firearm under section 12022.5 and his tying or binding the victim (§ 667.61, subd. (e)(4) & (6)). (*Mancebo, supra*, 27 Cal.4th at pp. 738, 742.) As a separate enhancement in each crime, the prosecution also alleged personal use of a firearm under section 12022.5. (27 Cal.4th at p. 738.)

The jury found the alleged One Strike circumstances and the alleged firearm use enhancements to be true. In sentencing on each of the two qualifying convictions, the trial court imposed a One Strike term of 25 years to life, plus a separate term of 10 years for the section 12022.5 firearm use. The trial court accomplished this result by manipulating the One Strike circumstances. That is, to make the separate firearm use enhancement under section 12022.5 available for an additional term, while at the same time maintaining the necessary two circumstances under the One Strike law for a 25-year-to-life sentence, the court substituted the uncharged One Strike circumstance of multiple victims (§ 667.61, subd. (e)(5)) for the charged circumstance of firearm use.

The California Supreme Court held that the "pleading and proof" requirement of section 667.61 precluded the trial court from using the uncharged multiple-victim circumstance to impose a One Strike sentence. Former subdivision (i) of section 667.61 (now subd. (j)) provided that "[f]or the penalties provided in this section to apply, the existence of any fact required under subdivision . . . (e) shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact." Because the information did not "allege[] a multiple victim

circumstance under subdivision (e)(5)," the Supreme Court held that "[s]ubstitution of that unpleaded circumstance for the first time at sentencing as a basis for imposing the indeterminate terms violated the explicit pleading provisions of the One Strike law." (*Mancebo, supra*, 27 Cal.4th at p. 743.)

The Supreme Court also concluded that imposing separate gun-use enhancements under section 12022.5 violated subdivision (f) of section 667.61. That subdivision provides, in substance, that when the prosecution has "pled and proved" only two circumstances in support of a 25-year-to-life sentence under subdivision (a), then "those circumstances shall be used as the basis for imposing the term provided in subdivision (a) . . . rather than being used to impose the punishment authorized under any other provision of law, unless another provision of law provides for a greater penalty . . . ." In *Mancebo*, the prosecution pled and proved only the "minimum number of circumstances" as to each qualifying crime, one of which was firearm use under section 12022.5. That circumstance, however, did not provide a greater penalty, and thus could not be the basis for a separate enhancement. "Accordingly, imposition of section 12022.5(a) gun-use enhancements . . . violated the plain language and express provisions of section 667.61, subdivision (f)." (*Mancebo, supra*, 27 Cal.4th at p. 744.)

The respondent in *Mancebo* argued that the multiple-victim circumstance under section 667.61, subdivision (e)(5) was sufficiently charged, even though it was not expressly mentioned, because the defendant was charged with committing qualifying crimes against more than one victim. (*Mancebo, supra*, 27 Cal.4th at p. 744.) Based on the statutory "pleading and proof" language, the Supreme Court rejected the argument. The Supreme Court reasoned, in substance, that the One Strike law requires not simply that the prosecution allege "the existence of any *fact*" underlying the subdivision (e) circumstances (§ 667.61, former subd. (i) [now subd. (j)], italics added), but also that the prosecution plead and prove the "*circumstances* specified in subdivision . . . (e)" (§ 667.61, subd. (f), italics added; see *Mancebo, supra*, 27 Cal.4th at pp. 744–745 ["the One Strike law clearly applies only if the information alleges facts, and also the 'circumstances specified in subdivision (d) or (e) which are required for the punishment provided in subdivision (a) or (b) [are] *pled and proved* . . .' " (original italics)]).

Thus, the inadequacy of pleading identified by the Supreme Court was not the failure to plead facts that would support the multiple-victim circumstance, but rather the failure to plead the circumstance itself. As stated by the court: "[N]o factual allegation in the information or pleading in the statutory

language informed defendant that if he was convicted of the underlying charged offenses, the court would consider his multiple convictions as a basis for One Strike sentencing under section 667.61, subdivision (a). Thus, the pleading was inadequate because it failed to put defendant on notice that the People, for the first time at sentencing, would seek to use the multiple victim circumstance to secure indeterminate One Strike terms under section 667.61, subdivision (a) *and* use the circumstance of gun use to secure additional enhancements under section 12022.5(a)." (*Mancebo, supra*, 27 Cal.4th at p. 745.)

■ The court did not purport to "hold that the specific numerical subdivision of a qualifying One Strike circumstance under section 667.61, subdivision (e), necessarily must be pled. We simply find that the express pleading requirements of section 667.61, subdivisions (f) and (i) [now (j)], read together, require that an information afford a One Strike defendant fair notice of the qualifying statutory circumstance or circumstances that are being pled, proved, and invoked in support of One Strike sentencing. *Adequate notice can be conveyed by a reference to the description of the qualifying circumstance (e.g., kidnapping, tying or binding, gun use) in conjunction with a reference to section 667.61 or, more specifically, 667.61, subdivision (e), or by reference to its specific numerical designation under subdivision (e), or some combination thereof. We do not purport to choose among them.*" (*Mancebo, supra*, 27 Cal.4th at pp. 753–754, italics added.) The court also observed that the pleading requirement in enhancement statutes is not simply a statutory imperative: "[I]n addition to the statutory requirements that enhancement provisions be pleaded and proven, a defendant has a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes." (*Id.* at p. 747.)

After discussing various other issues, the Supreme Court "conclude[d] the trial court erred at sentencing when it purported to substitute the unpled multiple victim circumstances for the properly pleaded and proved gun-use circumstances in support of the One Strike terms . . . . The gun-use enhancements were then improperly imposed under those counts in contravention of the provisions of section 667.61, subdivision (f)." (*Mancebo, supra*, 27 Cal.4th at p. 754.)

Recently, in *Arias, supra*, 182 Cal.App.4th 1009, 1017, the Court of Appeal relied on *Mancebo* to vacate jury findings of " 'first degree attempted murder' " and the indeterminate life sentences imposed on those verdicts.

Section 664, subdivision (a), provides a sentence of life with the possibility of parole for attempted willful, deliberate, and premeditated murder. It further provides: "The additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact."

In *Arias*, the information charged the defendant with two counts of attempted murder, but did not allege that the attempted murders were willful, deliberate, and premeditated. (*Arias, supra*, 182 Cal.App.4th 1009.) Nonetheless, the trial court instructed the jury that it must make a separate finding whether the attempted murders were willful, deliberate, and premeditated. The guilty verdicts returned by the jury did not contain such a special finding, but did find the defendant guilty of " 'first degree attempted murder.' " (*Id.* at p. 1017.) Based on these verdicts, the trial court sentenced the defendant to life terms for the attempted murders under section 664, subdivision (a).

The Court of Appeal reversed the sentence. After summarizing *Mancebo* and noting the similarity between the pleading and proof requirements of section 664, subdivision (a) and the One Strike law, the *Arias* court reasoned by analogy from *Mancebo* that "neither the information nor any pleading gave defendant notice that he was potentially subject to the enhanced punishment provision for attempted murder under section 664, subdivision (a)." (*Arias, supra*, 182 Cal.App.4th at p. 1019.)

■ We find that the reasoning of *Mancebo* and *Arias* compel the conclusion that section 12022.53, subdivision (e)(1), cannot be used for the first time on appeal to save the imposed firearm enhancement under subdivision (d), or the stayed enhancements under subdivisions (b) and (c). Like the One Strike law in *Mancebo* and the attempted murder statute in *Arias*, section 12022.53, subdivision (e)(1), has a specific pleading and proof requirement: "The enhancements provided in this section [meaning the enhancements of subds. (b), (c) & (d)] shall apply to any person who is a principal in the commission of an offense if both of the following are *pled and proved*: [¶] (A) The person violated subdivision (b) of Section 186.22. [¶] (B) Any principal in the offense committed any act specified in subdivision (b), (c), or (d)." (Italics added.)

Also as in *Mancebo* and *Arias*, there was a failure to comply with the pleading requirement. Discussing the necessity of pleading the required circumstance under the One Strike law, *Mancebo* held that "[a]dequate notice

can be conveyed by a reference to the description of the qualifying circumstance . . . in conjunction with a [statutory reference] or some combination thereof." (*Mancebo, supra*, 27 Cal.4th at p. 754.) Here, the information charged each defendant with personally committing acts specified in the firearm enhancements of section 12022.53, subdivisions (b) through (d), but did not mention the applicability of those enhancements through subdivision (e)(1), either by designation of that provision or by description of the required circumstances, i.e., that defendants were subject to the enhancements of subdivisions (b) through (d) because they violated section 186.22, subdivision (b) *and* because a principal committed an act described in section 12022.53, subdivisions (b) through (d). Thus, "no factual allegation in the information or pleading in the statutory language informed defendant[s] that if [they were] convicted of the underlying charged offenses," they would be subject to the firearm enhancements of section 12022.53, subdivisions (b) through (d) by virtue of the circumstances listed in subdivision (e)(1). (*Mancebo, supra*, 27 Cal.4th at p. 745.)

█ In short, to apply section 12022.53, subdivision (e)(1) for the first time on appeal would violate the express pleading requirement of that provision, and defendants' due process right to notice that subdivision (e)(1) would be used to increase their sentences.

### 4. *Harmless Error*

Respondent argues, in substance, that although section 12022.53, subdivision (e)(1), was not specifically pled in the information, the error was not prejudicial, because "the factual allegations in the information notified appellants that their sentences could be enhanced based on their being principals in the offenses, having violated section 186.22, and a principal having used a firearm in the commission of the offenses." Further, conceding that the verdict forms returned by the jury on the firearm enhancements did not specify that a principal used or discharged a firearm, respondent contends that this error was likewise harmless because, based on the jury instructions and the prosecutor's argument which referred to the substance of subdivision (e)(1), the jury findings that each defendant personally used a firearm, discharged a firearm, and discharged a firearm causing great bodily injury, necessarily reflected the jury's intent to find these same circumstances of firearm use by a *principal.*

Faced with similar arguments, the courts in *Mancebo* and *Arias* rejected the applicability of harmless error analysis. In *Mancebo*, the court concluded that the prosecution had forfeited the right to rely on the multiple-victim circumstance by failing to plead it: "There can be little doubt that the prosecution understood the One Strike law's express pleading requirements

and knew how to comply with them. . . . [T]he People's failure to include a multiple-victim-circumstance allegation must be deemed a discretionary charging decision. Not only is this conclusion supported by the record, but respondent does not contend, much less suggest, how the failure to plead the multiple victim circumstance was based on mistake or other excusable neglect. Under these circumstances, the doctrines of waiver and estoppel, rather than harmless error, apply." (*Mancebo, supra,* 27 Cal.4th at p. 749.)

The court disapproved a harmless error analysis, even though the defendant had, in fact, been convicted of qualifying crimes against more than one victim. The court reasoned in part: "We acknowledge that where a defendant is charged with and convicted of qualifying sex crimes against two or more victims, it may be difficult to meaningfully contest the truth of a multiple victim qualifying circumstance, whether or not that circumstance has been properly pled so as to afford the defendant fair notice it is being invoked in support of One Strike sentencing. But section 667.61 makes no special exception for the multiple victim qualifying circumstance—the statute's pleading and proof requirements apply to *all* of the qualifying circumstances enumerated in subdivisions (d) and (e). In many instances, the fair notice afforded by that pleading requirement may be critical to the defendant's ability to contest the factual bases and truth of the qualifying circumstances invoked by the prosecution in support of One Strike sentencing." (*Mancebo, supra,* 27 Cal.4th at p. 752.)

Similarly, in *Arias,* the court rejected the respondent's contention that the failure of pleading was a mere defect of form subject to harmless error analysis: "This was no mere formal defect in the information. Rather, defendant was not given notice of the special sentencing enhancement that would be used to increase his punishment [for attempted murder] from a maximum of nine years to a life term. Nor is this error reviewable under the abuse of discretion or harmless error analysis applicable to situations in which the information was amended during trial. Defendant's charging document was never amended. Accordingly, this is not the kind of error that can be cured by resort to a harmless error analysis as to whether the jury must have found the two attempted murders were committed willfully and with deliberation and premeditation." (*Arias, supra,* 182 Cal.App.4th at p. 1020.)

■ We conclude, as did the courts in *Mancebo* and *Arias* with respect to the statutes there at issue, that a harmless error analysis does not apply to the failure to meet the pleading requirement of section 12022.53, subdivision (e)(1). Rather, under the circumstances presented here, the prosecution's

failure to comply with the pleading requirements of subdivision (e)(1) constitutes a forfeiture of the right to rely on subdivision (e)(1) for the first time on appeal. Not only did the prosecution never seek to amend the information to allege subdivision (e)(1), it did not propose verdict forms referring to the subdivision, and did not argue that defendants should be sentenced under the subdivision. To the contrary, the prosecution's sentencing memorandum urged the court to sentence separately on the firearm enhancements of section 12022.53 *and* on the gang enhancement under section 186.22, subdivision (b). This sentencing argument excludes reliance on subdivision (e)(1) because, as respondent concedes on appeal, when section 12022.53 firearm enhancements are imposed under subdivision (e)(1), a separate gang enhancement under section 186.22, subdivision (b), cannot be imposed. (§ 12022.53, subd. (e)(2); *People v. Salas* (2001) 89 Cal.App.4th 1275, 1281–1282 [108 Cal.Rptr.2d 137].) Moreover, when the trial court sentenced, it did not purport to sentence under subdivision (e)(1). Rather, it adopted the prosecution's sentencing argument and sentenced on both the section 12022.53 and 186.22, subdivision (b) enhancements. On this record, where the prosecution failed to plead subdivision (e)(1), failed to ensure jury findings under that provision, failed to raise the provision at sentencing, and obtained a sentence from the trial court that violated subdivision (e)(1), we conclude that the prosecution has forfeited the right to rely on subdivision (e)(1) for the first time on appeal.

### 5. *Conclusion*

■ Because insufficient evidence supports the jury's findings under section 12022.53, subdivisions (b), (c), and (d) and under section 12022.5, we vacate those findings. The stayed and unstayed sentences imposed on the basis of those findings are also vacated. And because application of section 12022.53, subdivision (e)(1) would violate the express statutory language and defendants' due process rights, and because the prosecution has forfeited the right to rely on subdivision (e)(1), we cannot uphold the imposed 25-year-to-life enhancements under subdivision (d) of section 12022.53 or the stayed enhancements under subdivisions (b) and (c). We therefore order those enhancements stricken.

### C. *The Gang Enhancement**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1014.

II.–VI.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The true findings on the sections 12022.53 and 12022.5 enhancements are reversed and the sentences on those enhancements are vacated. The case is remanded for resentencing. The judgment is otherwise affirmed.

Manella, J., and Suzukawa, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 21, 2010, S182123.

---

*See footnote, *ante*, page 1014.