Filed 12/11/14  P. v. Vasquez CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040848 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS140262) |
| v. | |
| RENEE VASQUEZ, | |
| Defendant and Appellant. | |

### INTRODUCTION

Defendant Renee Vasquez pleaded no contest to possessing a short-barreled rifle and street terrorism.  The trial court suspended imposition of sentence and placed defendant on three years of formal probation with various terms and conditions.  On appeal, defendant challenges a condition prohibiting him from changing his residence outside of Monterey County or leaving California without the permission of the probation officer.  He also challenges a condition restricting him from obtaining new tattoos.  For the reasons stated below, we will strike the residence condition, but will otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Underlying Offense, Charges, and Plea*[1]

On January 28, 2014, Salinas police officers responded to a dispatch call reporting a drive by shooting. The officers conducted an area check and found the suspect vehicle as well as defendant and another individual, Augustine Lopez, walking away from it. Lopez was arrested at the scene. Defendant fled the scene, but the officers later found him hiding in a planter box. The officers took defendant into custody.

The police officers contacted the victims at their home. The victims indicated that they were at a drive-thru when they noticed a red minivan across the street with three men standing around it. The victims noticed that one of the men was staring at them. After the victims exited the drive-thru, they saw the minivan driving alongside their vehicle. The minivan then pulled behind the victims' vehicle. The occupants of the minivan fired gunshots, while tailgating the victims at a high rate of speed down the street. Eventually, the victims were able to get away and drove home.

The officers took the victims to the scene, where they identified the minivan as the one following them. The officers could see in plain view a rifle on the front passenger side floorboard of the minivan. The officers also found the keys to the minivan in defendant's pants. After searching the minivan, the officers found methamphetamine, a loaded short-barreled rifle, and a cell phone belonging to Lopez. The cell phone contained music and photos, establishing that Lopez had connections to a gang.

On January 31, 2014, the district attorney filed a complaint charging defendant with shooting at an occupied motor vehicle (Pen. Code, § 246[2]; count 1), discharging a firearm with gross negligence (§ 246.3, subd. (a); count 2), assault with a deadly weapon

---

[1] The underlying facts are taken from the probation report.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

(§ 245, subd. (a)(1); count 3), possession of a short-barreled rifle or shotgun (§ 33215; count 4), carrying a loaded firearm (§ 25850, subd. (a); count 5), street terrorism (§ 186.22, subd. (a); count 6), possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 7), and possession of a firearm with identification numbers removed (§ 23920; count 8). The complaint also alleged a gang enhancement (§ 186.22, subd. (b)(1)(A)) as to counts 1-5.

On February 11, 2014, defendant pleaded no contest to possessing a short-barreled rifle or shotgun (count 4) and street terrorism (count 6) pursuant to a negotiated plea agreement. As a condition of his plea agreement, defendant signed and initialed a pre-printed "waiver of rights" form, in which he indicated that he was waiving his "rights regarding state and federal writs and appeals. This includes, but is not limited to, the right to appeal [his] conviction, the judgment, and any other orders previously issued by [the trial] court." Additionally, defendant indicated he was waiving "all rights to appeal, writ, litigate, challenge or contest in the future any order issued by [the trial] court made *before* [February 11, 2014]," and "g[a]ve up the same rights concerning all contents of this waiver of rights form and conditions of [his] entry of plea and conviction as stated [t]herein." Additionally, at the change of plea hearing, the court asked defendant: "And you'd be giving up your appellate rights as indicated in the form as well. Do you understand that?" Defendant replied "Yes, I do, sir."

## B. *The Probation Report*

The probation report, which was prepared on March 12, 2014, noted that defendant was a documented member of the Sureño criminal street gang, and he had a history of involvement with that gang. On several occasions, officers had contacted defendant when he was wearing gang-related attire, and in one instance, defendant admitted he was a Sureño gang member. The report also mentioned that defendant had a

3

tattoo of the California flag on his arm, one dot on his right elbow, and three dots on his left elbow.

In addition, the probation report mentioned that defendant had a prior burglary offense in Arizona, for which he served a two and a half year prison term. There was nothing in the probation report about defendant's home life or his living situation.

The probation officer recommended several terms and conditions of defendant's probation including that defendant "3. Not change place of residence from Monterey County or leave [the] State of California without permission of the probation officer," and that he "22. . . . not obtain any new tattooing upon [his] person while on probation supervision. [He] shall permit photographing of any tattoos on [his] person by law enforcement."

## C. The Sentencing Hearing

At the sentencing hearing on March 20, 2014, the trial court suspended imposition of sentence and placed defendant on three years of formal probation. The trial court imposed various terms and conditions of probation, including the residence condition (condition 3) and the tattoo condition (condition 22). At the sentencing hearing, defendant objected to the portion of the residence condition "that requires him to receive advanced approval before leaving or changing a residence from Monterey County." He argued that the condition was an "unconstitutional infringement upon his right of interstate travel." Defendant did not object to the tattoo condition at the time of the hearing.

## DISCUSSION

## A. The Scope of the Waiver of the Right to Appeal

Defendant acknowledges that he waived his appeal rights, but he argues that "the scope of [his] waiver did not extend to any issues concerning the conditions of probation imposed by the trial court."

4

"The negotiated plea agreement, which results in the waiver of important constitutional rights, 'is an accepted and integral part of our criminal justice system.' [Citations.] Such agreements benefit the system by promoting speed, economy and finality of judgments. [Citation.]" (*People v. Panizzon* (1996) 13 Cal.4th 68, 79-80.) "Just as a defendant may affirmatively waive constitutional rights to a jury trial, to confront and cross-examine witnesses, to the privilege against self-incrimination, and to counsel as a consequence of a negotiated plea agreement, so also may a defendant waive the right to appeal as part of the agreement. [Citations.]" (*Id.* at p. 80.) However, "[a] broad or general waiver of appeal rights ordinarily includes error occurring before but not after the waiver because the defendant could not knowingly and intelligently waive the right to appeal any unforeseen or unknown future error. [Citation.]" (*People v. Mumm* (2002) 98 Cal.App.4th 812, 815; *People v. Vargas* (1993) 13 Cal.App.4th 1653, 1663 (*Vargas*); *People v. Sherrick* (1993) 19 Cal.App.4th 657, 659.)

In *Vargas,* the defendant appealed an award of custody credits after he had expressly waived his right to appeal as a part of a negotiated plea agreement. (*Vargas, supra,* 13 Cal.App.4th at p. 1656). The appellate court determined "that the general waiver of the right of appeal d[oes] not include error occurring after the waiver because it was not knowingly and intelligently made. Such a waiver of possible future error does not appear to be within defendant's contemplation and knowledge at the time the waiver was made. Any person in defendant's position would reasonably know that such a general waiver of appeal rights obviously included error occurring up to the time of the waiver; however, in our view, it is not reasonable to conclude that the defendant made a knowing and intelligent waiver of the right to appeal any unforeseen or unknown future error . . . ." (*Id.* at p. 1662.)

In this case, nothing in the record indicates that the probation conditions were ever discussed during the plea negotiations or at any time before defendant entered his plea

5

and waived his right to appeal. Accordingly, we conclude that the scope of defendant's waiver of appellate rights did not include the terms and conditions of probation.

## B. Probation Conditions

### 1. Residence Condition

Defendant contends that the condition prohibiting him from changing his place of residence from Monterey County or leaving California without permission of the probation officer is invalid because it violates his right to travel and it is unrelated to his crime.

"In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1. [Citations.]" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120-1121 (*Carbajal*).) "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*), fn. omitted.)

Moreover, a reasonable probation conditions may infringe upon constitutional rights provided they are narrowly tailored to achieve those legitimate purposes. (*People v. Olguin* (2008) 45 Cal.4th 375, 384 (*Olguin*); *In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) "[P]robation is a privilege and not a right, and . . . adult probationers, in preference to incarceration, validly may consent to limitations upon their constitutional rights . . . ." (*Olguin, supra,* at p. 384.)

Defendant contends that the residence condition is invalid because it not reasonably related to his crime. He compares this case to *People v. Bauer* (1989) 211 Cal.App.3d 937 (*Bauer*), in which the court struck a probation condition requiring that the defendant's "residence be subject to his probation officer's approval." (*Id.* at p. 943.)

6

In that case, defendant had been living at his parents' home where he had always lived; he had a close family relationship; he had no plans to leave his parents' home; and his parents would benefit from his helping them with work around the house. (*Id*. at p. 944.) The *Bauer* court held that the probation condition could not stand because there was nothing in the record "suggesting in any way that appellant's home life . . . contributed to the crime of which he was convicted or is reasonably related to future criminality" and "because residing with one's parents relates to conduct not in itself criminal." (*Id.* at p. 944, fn. omitted; see *Lent*, *supra*, 15 Cal.3d at p. 486.) Additionally, the court found that the probation condition was "all the more disturbing" because it impinged on the defendant's right to travel and freedom of association. (*Bauer*, *supra*, at p. 944.) "Rather than being narrowly tailored to interfere as little as possible with these important rights, the restriction is extremely broad. The condition gives the probation officer the discretionary power, for example, to forbid the appellant from living with or near his parents—that is, the power to banish him." (*Ibid.*)

Here, as in *Bauer*, there is nothing to suggest that defendant's living situation related to his crimes or his future criminality. The record has no mention of defendant's living situation, nor is there anything to suggest that his home life contributed to his offenses. Additionally, nothing in the record shows that defendant has any plans to change his residence or leave California. Thus, the residence condition does not relate to defendant's offenses. (*Lent*, *supra*, 15 Cal.3d at p. 486.) The condition is also not reasonably related to defendant's future criminality. (*Ibid.*) Although the probation report mentioned that he had committed a crime in Arizona, there is nothing to suggest that moving outside of Monterey County or leaving California would inhibit defendant's rehabilitation or influence his criminal behavior in any way. Lastly, the act of changing his residence outside of Monterey County or leaving California is not itself a crime. (*Ibid.*)

7

We recognize that a probation officer must know of any changes of defendant's residence in order to properly supervise him and to aid in his rehabilitation, and thus, a condition requiring *notification* of such changes is appropriate. (See *Carbajal*, *supra*, 10 Cal.4th at pp. 1120-1121.) We believe that condition 4, which provides that defendant "[r]eport any changes of residence, address or telephone number to the probation officer within 24 hours" adequately achieves the goal of proper supervision and rehabilitation.

The residence condition here, in itself, may be appropriate in other circumstances. However, based on the record before us, we conclude that the requirement that defendant obtain *approval* to change his residence outside of Monterey County or to leave California is unreasonable because the condition has no relation to his crime or future criminality. Therefore, we will strike condition 3.[3]

### 2. *Tattoo Condition*

Defendant contends that the condition prohibiting him from obtaining any new tattoos is unconstitutionally overbroad because it violates his right of free expression.[4] Defendant acknowledges that in *In re Antonio C.* (2000) 83 Cal.App.4th 1029 (*Antonio C.*) and *In re Victor L.* (2010) 182 Cal.App.4th 902 (*Victor L.*), appellate courts have found that similar tattoo conditions were not unconstitutionally overbroad. Defendant

---

[3] Defendant additionally argues that the residence condition is overbroad because it does not provide the probation officer a standard for determining whether a change is residence is appropriate. (See *People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1357, 1359.) Because we conclude that the condition is unreasonable because it does not relate to his crime or future criminality, we need not address defendant's alternative contention.

[4] Although defendant did not object to the tattoo condition at the sentencing hearing, a claim that a probation condition is unconstitutionally overbroad may be reviewed on appeal without an objection in the trial court if it presents a pure question of law based solely on facial constitutional grounds and do not require a review of the sentencing record. (*In re Sheena K., supra,* 40 Cal.4th 875 at pp. 878-879, 888-889.) We conclude that defendant's challenge to the tattoo condition is a facial challenge and is therefore not forfeited on appeal. (*Ibid.*)

8

contends that *Antonio C.* and *Victor L.* ignore "the evolving cultural status of tattoos today and narrowly and erroneously see them only as evidence of criminality or future criminality."

In *Antonio C.*, the Fifth District Court of Appeal upheld a probation condition barring a 15-year-old from obtaining *any* new tattoos. The court reasoned that since minors are prohibited from obtaining permanent tattoos with or without parental consent (§ 653), the challenged condition was analogous to the condition requiring him to obey all laws. (*Antonio C.*, *supra*, 83 Cal.App.4th at p. 1035.) Furthermore, the court explained, "the condition is sufficiently related to his rehabilitation, and is a reasonable exercise of the juvenile court's supervisory function to provide for his safety and protection." (*Ibid.*, fn. omitted.) The court rejected the minor's argument that the condition infringed on his constitutional right to free speech. The court stated, "Assuming, without deciding, that tattoos and related skin markings constitute speech under the First Amendment [citation], the probation condition does not unduly burden Antonio's free speech rights. The United States Supreme Court has long held that while nonverbal expressive activity cannot be banned because of the ideas it expresses, it can be banned because of the action it entails. For example, burning a flag in violation of an ordinance against outdoor fires may be punished, whereas burning a flag in violation of an ordinance against dishonoring a flag may not. [Citation.] Here, the probation condition, which is content neutral, temporarily prohibits Antonio from self-expression through permanent skin disfigurement. Its focus is the manner in which the message is conveyed, not the message itself. As such, it constitutes a reasonable manner restriction on Antonio's free speech rights." (*Ibid.*)

In *Victor L., supra,* 182 Cal.App.4th 902, the First District Court of Appeal upheld a probation condition prohibiting an 18-year-old from obtaining any new tattoos, noting that the language of the challenged condition was almost identical to the language of the condition the *Antonio C.* court had approved. (*Id.* at p. 928.) That court stated that it was

"reluctant to hold unconstitutional language which was specifically prescribed by another Court of Appeal." (*Ibid.*)

Appellant attempts to distinguish *Antonio C.* and *Victor L.* on the ground that both cases involved minors. The court rejected an age-related argument in *Victor L,* commenting that "[t]he gist of Victor's argument appears to be that tattoo conditions of probation become unenforceable after the probationer reaches age 18 because California law does not prohibit the tattooing of a person over 18. [Citation.] But he overemphasizes the role of the penal law in this context. We agree with the constitutional analysis of *Antonio C., surpa,*183 Cal.App.4th 1029 and conclude that the prohibition on acquiring tattoos while on juvenile probation is a proper condition for gang members or those at risk of becoming gang members, regardless of their age, so long as they remain under the juvenile court's jurisdiction." (*Victor L., supra,* 182 Cal.App.4th at p. 928.)

The *Victor L.* court observed, "[j]ust because it is lawful for an 18 year old to get a tattoo does not mean it is wise," the court refused to modify the condition by limiting its prohibition to the acquisition of new tattoos " 'with gang significance.' " (*Victor L., supra,* 182 Cal.App.4th at pp. 929-930.) The court did so for two reasons. First, "[t]attoos are ... commonly worn by gang members to show gang affiliation. [Citations.] Whether tattoos are gang related or not, a heavily tattooed appearance tends to give rise to prejudices or suspicions about the tattooed person—warranted or not—that could interfere with a ward's future aspirations, such as employment opportunities. Thus, the prohibition on tattoos tends to steer wards away from gang appearance, gang identity, and the social stigma sometimes attached to tattoos." (*Ibid.*) Second, "gang tattoos may employ obscure symbols not readily recognized or catalogued as gang tattoos. [Citation.] Thus, a complete ban on new tattoos enhances the enforceability of the condition." (*Id.* at p. 930.) Since these factors made the tattoo ban part of a program of reform and rehabilitation, the total ban on new tattoos "for the remainder of Victor's probationary period [wa]s not overbroad." (*Ibid.*)

We conclude that the reasoning of *Antonio C.* and *Victor L.* applies in this instance. Specifically, we find the observation in *Victor L.* that "gang tattoos may employ obscure symbols not readily recognized or catalogued as gang tattoos" persuasive. Although defendant is not a minor or an adult under the juvenile court's jurisdiction, we believe a content-neutral prohibition on acquiring new tattoos is a proper condition for an adult gang member while on probation under the superior court's jurisdiction. "Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled." ' [Citations.]" (*U.S. v. Knights* (2001) 534 U.S. 112, 119; see also *Olguin*, *supra*, 45 Cal.4th at p. 384.) Accordingly, we conclude that the ban on acquiring new tattoos (condition No. 22) requires no modification.

### DISPOSITION

The probation condition mandating that defendant "[n]ot change place of residence from Monterey County or leave [the] State of California without permission of the probation officer" is stricken. As modified, the judgment is affirmed.

11

_____
RUSHING, P.J.

WE CONCUR:


_____
ELIA, J.



_____
MÁRQUEZ, J.