Filed 9/3/12  P. v. George CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B239059 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. SA 074226) |
| RONNAIL DEON GEORGE et al., | |
| Defendants and Appellants. | |

APPEAL from judgments of the Superior Court for the County of Los Angeles. James R. Dabney, Judge.  Affirmed as to Defendant and Appellant Ronnail Deon George. Affirmed in part and remanded for resentencing as to Defendant and Appellant Jotis Freeman.

Linda Acaldo, under appointment by the Court of Appeal, for Defendant and Appellant Ronnail Deon George.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant Jotis Freeman.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II, and Sonya Roth, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# SUMMARY

Ronnail Deon George and Jotis Freeman were tried before separate juries on 15 felony counts in connection with commercial burglaries and robberies that took place a few days apart at an IHOP restaurant, a Blockbuster video store and a Ralphs grocery store. George's jury convicted him on all counts and found special allegations of gun use by a principal and gang enhancements true. Freeman's jury convicted him of the counts relating to the IHOP and Ralphs crimes, and found allegations of personal use of a firearm true, but found the gang allegations not true and could not reach a verdict on the nine counts relating to the Blockbuster crimes. The court sentenced George to state prison for 23 years 8 months, and sentenced Freeman to prison for 27 years 8 months.

Both defendants appeal. George challenges only the sufficiency of the evidence to support the gang enhancement. Freeman contends the trial court abused its discretion and violated his federal due process rights by failing to consider his youth (16 years old) as a mitigating factor at his sentencing. He also contends, and respondent concedes in part, the trial court erred in sentencing on the firearm enhancements. We affirm the judgment against George. In the Freeman case, the matter is remanded for resentencing on three firearm enhancements and the judgment is otherwise affirmed.

# FACTS

In the early hours of April 13, 2010, after leaving a party, Freeman told George, "I'm about to go get some money," and George went with him. They drove to an IHOP restaurant and went inside. Freeman came up behind Jessica E., who was working there that morning, put a gun to the back of her head, and told her "to give him the money." Freeman held the gun to her head while they walked about 50 feet to the cash register. Freeman told George to "go get them, like people in the back of the restaurant," and George ran toward the back of the restaurant. Jessica could not find the key to open the register, so she and Freeman walked to another register, with Jessica still at gunpoint. She found the key, they walked to the main register, and Jessica opened it.

Meanwhile, Alberto T., who was working as a busboy in an employee area at the back of the restaurant, saw George running around in the back, and came out to see what was going on. George "just jumped out" and raised his fists, "like he tried to hit me."

2

Alberto tried to defend himself but then "saw that the other guy had my friend, the other waitress," and "had a gun to the waitress' head." He "realized that it was a robbery and I -- I just stopped."

When Jessica E. opened the main register, Freeman was upset because there was only about a $100 there. Freeman took all the paper money and George took quarters from the register. Then, one or both of them took Jessica's cell phone and money out of her apron, and defendants ran out of the store.

Three days later, in the late evening of April 16, 2010, George was "hanging out" with "bangers," including Freeman. They drove to a Blockbuster, and George, Freeman and two others walked into the store together. One of them said, "This is a robbery," and at least two or more of them had guns. One of them pointed his gun at the head of James P., a Blockbuster employee, and demanded money, while the others spread out in the store, and most of the patrons got down on the floor, including Roy L., Daniel S. and Jaswant A., who heard the manager (Mirta M.) screaming inside the office when one of the men tried to kick open the door. The man pointing a gun at James said he would kill James if he did not open the register. One of the customers, Patrycja H., was on her cell phone, browsing videos, when she heard loud voices and turned around to find a man with a gun who ordered her to give him her cell phone and lie down on the floor. She complied. Another customer, Aksana G., was in the checkout line with her boyfriend, Dominic D. When the robbers told the patrons to "get down," Aksana complied. Her purse was on the counter. When she got up after the robbers left, the purse was gone, and she never got it back. James was not able to open the registers. One of the men said something like, "Let's get out of here," and they all left.

An hour later, George, Freeman and two other men walked into a Ralphs grocery store. They walked down different aisles, looking around, and then came back to the checkstand area. One of them, who had a gun, moved toward the manager, Carmen O., who was next to the safe. Another of them, who also had a gun, ran to the cashier, Brooke C., and a third man, also armed, stopped the cashier's bagger, Hugo S., from coming near the cashier. The man with a gun who approached the cashier ordered her to open the register and give him the money. She opened the register and backed up; two of

the men with guns ran to the register, pulled the drawer out and took the money underneath the drawer. They ran toward the door. Carmen O. had been counting money and had been putting it in black bags until an employee drew her attention to the commotion at Brooke's checkstand. When the robbers saw Carmen, they came toward her, pointing the guns at her; one of them said, "Give me the money." They took two bundles of money from a drawer and started to run away, but then saw the black bags Carmen had been filling with money. Two of them came back and took two of the bags and then ran.

George and Freeman were charged by information with 15 felonies, including three counts of second degree commercial burglary (Pen. Code, § 459);[1] four counts of second degree robbery (§ 211); one count of attempted second degree robbery (§§ 664, 211); and seven counts of false imprisonment by violence (§ 236).

The information alleged, as to all counts, that a principal personally used a firearm, a handgun, within the meaning of section 12022.53, subdivisions (b) and (e)(1). As to all counts except count 1 (commercial burglary at the IHOP), the information alleged Freeman personally used a firearm within the meaning of section 12022.53, subdivision (b). As to all counts, the information alleged the crimes were committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) The information also alleged George had suffered one prior strike conviction, in juvenile court.

Defendants were tried by separate juries. Various witnesses testified to the facts we have described, and a gang expert testified. Surveillance tapes at the robbery locations and police interviews with both defendants were also admitted into evidence.

George's jury found him guilty on all counts, and found the gang allegation true on all counts. The allegation that a principal personally used a firearm was found to be true as to the robbery and attempted robbery counts (counts 2, 4, 5, 13 and 14). George waived a jury trial on his prior conviction, and the court found it to be true.

Freeman's jury found him guilty on counts 1, 2, 12, 13, 14 and 15 (the crimes at IHOP and Ralphs), but could not agree on the counts relating to the Blockbuster crimes.

---

[1] All further statutory references are to the Penal Code.

The jury found the gang allegations not true, and found the gun use allegations (personal use of a firearm within the meaning of section 12022.53, subdivision (b)) to be true on all of the six counts of which Freeman was convicted. The jury also found the allegation that a principal personally used a firearm within the meaning of section 12022.53, subdivisions (b) and (e)(1), to be true as to the robbery counts (counts 2, 13 and 14).

George sought a new trial on the gang allegations, contending there was no support for the gang expert's opinion and "no indicia in the facts of this case that would lead anybody to think that this was done for the benefit of the gang or in association with the gang." The court denied George's motion, observing the jury apparently accepted the expert's testimony and "[a]lso, the facts and circumstances of these crimes, particularly the Blockbuster, certainly had indicia that this was a gang-related event in that they were working coordinated together, going in to do a take-over robbery."

The trial court granted George's motion to strike his prior conviction. The court acknowledged the prosecutor's offer to George before trial of 26 years was "pretty much in the ballpark of what this case was worth," but observed that, based on Freeman's conduct at the IHOP and Ralphs, compared to George's at all three locations, the court was "loath . . . to give [George]" a longer term than Freeman. The court sentenced George to a total of 23 years eight months in state prison, ordered custody credits, imposed fines and made other orders not at issue in George's appeal.[2]

The court sentenced Freeman to a total term in state prison of 27 years eight months. (The state chose not to retry the Blockbuster counts against Freeman, and they were dismissed.) The sentence consisted of 15 years on count 2, robbery of Jessica E. at the IHOP (the high term of 5 years, plus 10 years for personal use of a firearm under section 12022.53, subdivision (b)); a consecutive term of 4 years 4 months on count 13, the robbery of Carmen O. at Ralphs (1 year for the robbery, plus 3 years 4 months for the

---

[2]     George was sentenced to the base term of 15 years on count 2; two consecutive terms of 4 years 4 months each on counts 5 and 13; a concurrent term of 13 years on count 4; concurrent terms of 7 years on each of the seven counts of false imprisonment by violence; and a concurrent term of 15 years on count 14. The court also imposed and stayed, under section 654, 7-year terms on each of the three commercial burglary counts.

gun enhancement); a consecutive term of 4 years 4 months on count 14, the robbery of Brooke C. at Ralphs (calculated as in count 13); and a consecutive term of 4 years on count 15, false imprisonment by violence at Ralphs (8 months, plus 3 years 4 months for the personal use of a firearm under section 12022.53, subdivision (b)).  In addition, the court imposed and stayed sentences of 13 years on each of the two commercial burglary counts (counts 1 and 12) (the high term of three years, plus 10 years for the personal gun use allegations under section 12022.53).  The court also ordered custody credits, imposed fines and made other orders not at issue in Freeman's appeal.

Both defendants filed timely appeals that were later consolidated.

## DISCUSSION

### 1.    The George Appeal

George contends the evidence was insufficient to establish the gang allegations beyond a reasonable doubt.  We disagree.

We review claims of insufficiency of the evidence to support a gang enhancement by examining the entire record in the light most favorable to the judgment, to determine if substantial evidence exists for a reasonable trier of fact to find the gang allegations true beyond a reasonable doubt.  (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60 (*Albillar*).) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Id.* at p. 60.)  The reviewing court "'neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*Ibid*.)

The legal principles applicable to allegations that a crime was committed for the benefit of a gang are these.

First, as *People v. Gardeley* (1996) 14 Cal.4th 605 (*Gardeley*) teaches, the street terrorism statute "does not criminalize mere gang membership . . . ." (*Id.* at p. 623.) Instead, it imposes increased criminal penalties only when the felonious conduct is gang related – that is, committed "'for the benefit of, at the direction of, or in association with' a group that meets the specific statutory conditions of a 'criminal street gang'" – *and* is committed "with the 'specific intent to promote, further, or assist in any criminal conduct by gang members.'" (*Id.* at pp. 623-624, quoting § 186.22, subd. (b)(1).)

6

Second, as *Albillar* tells us, the gang enhancement "does not depend on membership in a gang at all. Rather, it applies when a defendant has personally committed a gang-related felony with the specific intent to aid members of that gang." (*Albillar, supra,* 51 Cal.4th at pp. 67-68.) *Albillar* summarized: "if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Id.* at p. 68.)

Third, California law permits expert testimony on "the culture and habits of criminal street gangs." (*Gardeley, supra*, 14 Cal.4th at p. 617; see also *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1196 (*Frank S.*) ["[i]t is well-settled that a trier of fact may rely on expert testimony about gang culture and habits to reach a finding on a gang allegation"].)

In this case, Officer Kenneth Sanchez testified as the prosecution's gang expert. Among other matters, Officer Sanchez testified, "I've known [George] to be an associate of the Black P-Stone gang." The basis for his opinion included a field identification card documenting a stop made by Officer Sanchez's partner. The police use a field identification card to document people who are stopped, and on the back of the card, the police list individuals with whom the person was stopped. In this case, the field identification card indicated George "was with a self-admitted, documented Black P-Stone gang member by the moniker of Speedy at a known gang location with other gang members." The "self-admitted" gang member was Benny Golliday, and on the back of the card, George was listed as a "'BPS [(Black P-Stone)] Associate.'" Officer Sanchez also testified that, after reviewing police department resources, he knew George to have a moniker of "No Respect Boy," connected with the Black P-Stone gang.

A further basis for Officer Sanchez's opinion that George was an associate of the Black P-Stone gang was that the crimes were committed with Freeman. Officer Sanchez testified he knew Freeman, and Freeman had "self-admitted to me and other officers about being a Black P-Stone gang member with a moniker of Baby Bambino." Officer Sanchez was present when Freeman was arrested with two other documented Black P-Stone gang members in the lower Baldwin Village, when a gang injunction was in place.

7

Freeman's gang membership affected Officer Sanchez's opinion as to George's association with the gang, because "[a] documented gang member won't commit certain acts with a regular civilian or someone not part of their gang." In addition, George's statement to the police showed George "knows and understands how to put in work into the gang" – that is, "trying to make a name for yourself" by committing robberies or other particular kinds of crimes. George was "aware of how different people put in different work in different ways," and "to him it's robberies."

Then, the prosecutor posed a hypothetical based on the facts of the IHOP robbery, and asked for Officer Sanchez's opinion "as to whether or not that crime is committed for the benefit of, at the direction of, or in association with the Black P-Stones gang." Officer Sanchez opined "it's most definitely in the direction, benefit of the Black P-Stone Gang." He observed there was one gang member and one "affiliate to that Black P-Stone gang member"; they strategized and split up at the IHOP; the documented gang member (Freeman) had a handgun in his hand "showing the younger gang members how to pretty much operate"; and "[a]ll this is like a learning factor that these guys do," a "training experience." Further, the robbery occurred outside the Black P-Stone gang territory, where George and Freeman were more likely to get away without being identified. Officer Sanchez also opined George committed the crime in association with the Black P-Stone gang, for the reasons just stated and because "the hierarchy won't allow a nondocumented member to hang out with a gang member, commit these crimes, and not get a portion of what they're going to get."

Officer Sanchez further opined George's conduct in the IHOP hypothetical "is conduct that promotes, furthers, or assists in criminal conduct by gang members of the Black P-Stone gang," because the money generated from robberies is used to fund various gang expenses. "The robberies . . . are probably the quickest way to get revenue from [*sic*] the gang. From there they purchase guns, narcotics. They post people's bails. They fund parties. And a percentage of that gets disseminated within the gang again to promote and to recruit." The conduct of George and Freeman at the IHOP, both in the range of 18 years old, was "a benefit for them and the gang," because the older gang members "know who's putting in work. . . . They're elevating their status in the gang.

8

Again, they're generating revenue. They're causing fear and -- in the community, causing witnesses to be reluctant to come and testify, therefore promoting the Black P-Stone gang."

In response to hypotheticals mirroring the facts of the Blockbuster and Ralphs robberies, Officer Sanchez opined similarly that the crimes were committed for the benefit of, at the direction of, or in association with the Black P-Stone gang.

In an interview with the police, George denied being a gang member, but admitted he hung out with the Black P-Stones and knew the police classified him as a Black P-Stone. George knew Freeman was a Black P-Stone.

George contends Officer Sanchez's opinion "was insufficient to constitute substantial evidence that [George] possessed the specific intent to promote, further, or assist in any criminal conduct by gang members." We disagree. The evidence plainly showed George "intended to and did commit the charged felon[ies] with" Freeman; Freeman was a member of the Black P-Stone gang; and George knew it. (See *Albillar*, *supra*, 51 Cal.4th at p. 68.) The crimes were thus gang related because they were "committed . . . in association with" a gang and, as Officer Sanchez testified, benefited the gang. (§ 186.22, subd. (b)(1).) And *Albillar* expressly tells us that if the evidence "establishes that the defendant intended to and did commit the charged felony with known members of a gang" -- as it does here -- then "the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Albillar*, at p. 68.) The jury made that inference here, and, as *Albillar* also tells us, even if the circumstances "might also reasonably be reconciled with a contrary finding," we could not reverse the judgment. (*Id.* at p. 60.)

George insists *Albillar* also states "[n]ot every crime committed by gang members is related to a gang." (*Albillar*, *supra*, 51 Cal.4th at p. 60.) But a crime committed "in association with" a gang *is* gang related, and here George (an associate of the gang) and Freeman (a documented gang member), "actively assisted each other in committing" the crimes. (*Id.* at p. 62.)

George also cites several cases that found insufficient evidence to support gang allegations. None of them is analogous to this case. *Frank S.*, *supra*, 141 Cal.App.4th

9

1192 involved a minor convicted of possession of a concealed knife, not a crime committed with another member of his gang. *In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1361, the court there said, was "far different factually from *Albillar*," because in *Daniel C.*, there was "no evidence that [the defendant] acted in concert with his companions," who had left the store before the defendant committed the crimes, did not assist him in assaulting the store manager, and did not even see what happened after they left. In *People v. Ramon* (2009) 175 Cal.App.4th 843, 853, which pre-dated *Albillar*, the court refused to hold as a matter of law that two gang members in possession of illegal or stolen property in gang territory are acting to promote a criminal street gang, but observed that the analysis "might be different if the expert's opinion had included 'possessing stolen vehicles' as one of the activities of the gang." And in *People v. Ochoa* (2009) 179 Cal.App.4th 650, the defendant acted alone in connection with a carjacking and being a felon in possession of a firearm, so an expert's opinion based solely the defendant's past gang activities and gang affiliation was insufficient. (*Id.* at pp. 656-657, 665.)

In short, none of these cases is like this case, where George actively assisted a known gang member in committing the crimes. We therefore affirm the true finding on the gang enhancement.

## 2.     The Freeman Appeal

Freeman raises three issues related to his sentencing.

First, Freeman contends the trial court failed to consider his youth (16 when the crimes were committed) as a mitigating factor, abusing its discretion and violating Freeman's federal due process rights. We do not agree with Freeman's premise.

The court, after hearing argument, reviewing the probation and preplea sentencing reports, and indicating its familiarity with all the facts as the trial judge in the case, said this:

> "The court, in reviewing the aggravating and mitigating factors in this case -- which I know are not controlling, I have to use my judgment, but which is what does provide guidance -- none of the factors in mitigation apply in this particular case. None.

10

The only factor in mitigation that I could possibly say here -- I don't know if it's a factor in mitigation or just adding to the tragedy of this situation, is that Jotis Freeman is such a young man.

"As far as the factors in aggravation, I would point out that in that crime Mr. Freeman not only was armed with a gun, but the manner in which he used it was particularly callous in that he approached the cashier at the IHOP, put the gun to her head, directly to her head, and while standing by the – the cash register in that particular offense.

"And so I do find that the – it went beyond the mere use of a gun. It was the manner in which the gun was used in this particular case. And I think that those circumstances are a factor in aggravation.

"I'll also point out that while he didn't have any adult priors or any priorable sustained petitions that could be used, he did have sustained petitions for battery and for burglary, apparently. I don't know if it was a residential burglary. It appears to be since he was given six years on the disposition of two months in camp; as well as for failures to obey a court order, a sustained petition.

"So it does appear that these all started in '07, '08, and '09. So his conduct prior, leading up to this thing, are of increasing seriousness, obviously culminating in these offenses, which takes it to another level completely. So I do think the high term is warranted in this particular case."

Although the trial court initially said there were no mitigating factors, the court immediately followed that with a statement that clearly acknowledged Freeman's youth. As a reviewing court, we do not parse the trial court's words too closely but consider the entire record of the sentencing hearing. (See *People v. Thomas* (2011) 51 Cal.4th 449, 474-475.) The trial court concluded that under the circumstances, Freeman's youth should not reduce the sentence. That is not an abuse of discretion. Any other conclusion would require a sentence reduction for any juvenile no matter how egregious his conduct. That is not the law.

Second, Freeman contends it was error to impose a personal use firearm enhancement on count 1 (commercial burglary at the IHOP) because none was alleged in the accusatory pleading. Although the information alleged a principal personally used a firearm, a handgun, within the meaning of section 12022.53, subdivisions (b) and (e)(1), it did not allege Freeman personally used a firearm. And section 12022.53, subdivision

11

(j), states that, for the penalties in section 12022.53 to apply, "the existence of any fact required under subdivision (b), (c), or (d)" – including personal use of a firearm – "shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."

Respondent contends that, despite the statutory language, the personal use enhancement may be applied because Freeman "cannot say that he was surprised by the allegation" or that he was deprived of the opportunity to present a defense on the allegation. Respondent points out the information alleged a principal personally used a firearm; the trial evidence was overwhelming that it was Freeman; the jury was instructed on the personal use allegation and it was included on the count 1 verdict form, without objection by defense counsel; and Freeman's defense could not have been compromised, because the defense would have been identical to the defense of the personal use allegation in count 2, the robbery of Jessica E. at the IHOP.

We conclude, under the authority of *People v. Houston* (2012) 54 Cal.4th 1186, (*Houston*), that because defendant had adequate notice that he faced punishment for personal use of a firearm on count 1 and did not raise an objection in the trial court, he has forfeited this claim on appeal. (See *id.* at p. 1228.)

In *Houston*, the indictment failed to comply with the requirements of section 664, which provides for additional punishment (life in prison) when an attempted murder is willful, deliberate and premeditated, but provides that the additional term "shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact." (§ 664, subd. (a).) The court observed a defendant "has a due process right to fair notice of the allegations that will be invoked to increase the punishment for his or her crimes," but held that under the facts of that case, because defendant had adequate notice of the punishment he faced and did not object, he forfeited his claim. (*Houston, supra,* 54 Cal.4th at pp. 1227, 1228.)

In *Houston*, the trial court had expressly noted the defendant would be sentenced to life imprisonment if convicted; asked the parties during the defense case to say if there were any problems with the proposed jury instruction and verdict forms; told the parties a

12

week later the verdict form would include deliberate and premeditated attempted murder as a special finding; and instructed the jury to determine whether the attempted murders were willful, deliberate, and premeditated, indicating a special finding on the question appeared on the verdict form. (*Houston*, *supra*, 54 Cal.4th at p. 1227.) The Supreme Court concluded: "Had defendant raised a timely objection to the jury instructions and verdict forms at any of these stages of the trial on the ground that the indictment did not allege that the attempted murders were deliberate and premeditated, the court could have heard arguments on whether to permit the prosecutor to amend the indictment. . . . On the facts here, defendant received adequate notice of the sentence he faced, and the jury made an express finding that the attempted murders were willful, deliberate, and premeditated. A timely objection to the adequacy of the indictment would have provided an opportunity to craft an appropriate remedy. Because defendant had notice of the sentence he faced and did not raise an objection in the trial court, he has forfeited this claim on appeal." (*Id.* at pp. 1227-1228, citation omitted.)

The circumstances here similarly justify the conclusion that Freeman has forfeited his claim that the personal gun use allegation in count 1 should be stricken. The court instructed the jury that if the jury found Freeman guilty of the crimes charged, it then must decide "whether, for each crime, the People have proved the additional allegation that the defendant personally used a firearm during the commission of that crime. You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime." Freeman did not object to this instruction. The guilty verdict form for count 1 likewise included a finding on Freeman's personal use of a firearm. And the jury made the express finding that the allegation that Freeman personally used a firearm within the meaning of section 12022.53, subdivision (b) was true.

The instructions to the jury and the verdict form provided Freeman with adequate notice that he faced additional punishment for personal use of a firearm with respect to count 1, just as he did with respect to all the other counts of the information. As in *Houston*, "[b]ecause defendant had notice of the sentence he faced and did not raise an objection in the trial court, he has forfeited this claim on appeal." (*Houston, supra*, 54

13

Cal.4th at p. 1228; see also *People v. Riva* (2003) 112 Cal.App.4th 981, 1002, 1003 [imposing a section 12022.53 enhancement on a count on which it was not pled "did not violate section 12022.53, subdivision (j) or [the defendant's] right to due process of law"; the enhancement was pled "as to some of the counts in the information, just not the one on which the trial court imposed it," and the defendant "was on notice he had to defend against the allegation" because it was pled as to the other counts that went to trial].)[3]

Finally, Freeman contends, and respondent concedes, the 10-year enhancements imposed under section 12022.53 in connection with counts 1, 12 and 15 (the commercial burglaries and the false imprisonment by violence) were imposed in error, and the enhancement under section 12022.5 must be imposed instead. The parties are correct. The firearm enhancements in section 12022.53 apply only to felonies specified in subdivision (a) of that section, and neither commercial burglary nor false imprisonment by violence are among those specified. But section 12022.5, subdivision (a) provides "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the

---

**3**        Other cases in other circumstances have stricken sentences that were based on unpled sentence enhancements, but in this case we find *Houston* to be directly on point. (See *People v. Mancebo* (2002) 27 Cal.4th 735, 739, 743 ["pleading and proof" requirement of section 667.61 precluded the trial court from using uncharged multiple-victim circumstance to impose a One Strike sentence; "[s]ubstitution of that unpleaded circumstance for the first time at sentencing as a basis for imposing the indeterminate terms violated the explicit pleading provisions of the One Strike law"]; *People v. Botello* (2010) 183 Cal.App.4th 1014, 1028-1029 [prosecution could not use the provisions of section 12022.53, subdivision (e)(1), for the first time on appeal, to enhance defendants' sentences, because subdivision (e)(1) was not charged in the information; "where the prosecution failed to plead subdivision (e)(1), failed to ensure jury findings under that provision, failed to raise the provision at sentencing, and obtained a sentence from the trial court that violated subdivision (e)(1), we conclude that the prosecution has forfeited the right to rely on subdivision (e)(1) for the first time on appeal"]; *People v. Arias* (2010) 182 Cal.App.4th 1009, 1016-1017, 1020 [information did not allege attempted murder was willful, deliberate and premeditated, so additional sentence under section 664, subdivision (a), which "shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading," was unauthorized; "nothing in the information gave defendant reason to suspect the enhanced punishment statute for attempted murder applied to him"].)

state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense." While the personal firearm use enhancement was charged and found true under section 12022.53, the same factual findings support a true finding under section 12022.5. (See *People v. Strickland* (1974) 11 Cal.3d 946, 959, 961 [section 12022.5 (then applicable to only six specified felonies) was improperly applied to a defendant convicted of voluntary manslaughter because that crime was not among those specified, but jury found the defendant was armed with a firearm when the offense was committed; because he was charged with use of a firearm under section 12022.5, he "had notice that his conduct [could] also be in violation of section 12022 [providing additional punishment for commission of any felony while armed with a deadly weapon]," which "would be applicable in any case in which [section] 12022.5 applies"].)

## DISPOSITION

In the case of Ronnail Deon George, the judgment is affirmed. In the case of Jotis Freeman, the matter is remanded for resentencing under section 12022.5 on the firearm use enhancements attached to counts 1, 12 and 15 and for correction of the abstract of judgment accordingly, and in all other respects the judgment is affirmed.


GRIMES, J.


We concur:


BIGELOW, P. J.


RUBIN, J.


15