Filed 9/27/16  P. v. Tamayo CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B262958 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA414983) |
| v. | |
| MICHAEL TAMAYO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge.  Affirmed in part, modified in part and remanded.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Michael Tamayo was charged with 17 counts of kidnapping, sexually assaulting, and robbing four women on four occasions in 2013. At jury trial, defendant's theory was that all four women were prostitutes with whom he engaged in consensual sexual acts. The jury acquitted him on three counts and convicted him of lesser included offenses on seven others. He was found guilty as charged on seven counts, however, and the trial court sentenced him to a total term of 70 years, eight months to life.

In this appeal, defendant primarily challenges the sentences he received for the crimes he committed against two of the four women, D.H. and C.E. He contends that the trial court erred by imposing full consecutive sentences for each forcible sex act against those victims. He also argues that the trial court erred in sentencing him pursuant to the "One Strike" law, Penal Code section 667.61, because the pleading and proof of the requisite special allegations were flawed. Defendant additionally contests the accuracy of his abstract of judgment. He argues that it erroneously reports convictions for certain offenses with which he was charged rather than the lesser included offenses of which he was convicted, and that two of the fees and assessments are too high. The Attorney General agrees that the abstract of judgment is inaccurate in these respects and must be modified. The Attorney General also contends that the abstract of judgment must be further modified to eliminate defendant's 83 days of presentence conduct credit.

We conclude that the trial court properly sentenced defendant to full and consecutive terms for each of the sex offenses perpetrated against victims D.H. and C.E. We agree with defendant, however, that the "One Strike" sentence the court imposed on count 9 must be reversed. We further agree with both parties that the convictions on counts 1-4 documented in the abstract of judgment and the fees assessed defendant must be corrected. We also conclude that defendant's presentence conduct credit must be stricken. We remand the matter to the trial court for resentencing on count 9 and correction of the abstract of judgment. The convictions and sentence are otherwise affirmed.

2

# FACTUAL BACKGROUND

Although defendant was charged with offenses against four women, D.H., L.J., R.W., and C.E., only the facts pertaining to defendant's encounters with D.H. and C.E. are relevant to this appeal. We accordingly relate only those facts here. We note, however, that L.J. and R.W. testified similarly to D.H. and C.E., and that defendant presented a similar defense to their allegations.

## A.     Prosecution Case

### 1.     *Victim D.H.*

D.H., who was 22 years old at the time of trial, testified to the following. On the night of April 4, 2013, she was walking home alone down 108th Street toward Main. A man with a gun approached her from an alley and told her to get in his car. She complied and got in the front passenger seat. The man got in the driver's seat and pointed the gun at her head. He told her not to worry, but also told her that he would kill her if she did anything.

The man drove to the area of Avalon and 111th Street and parked the car on the street. He told D.H. that he wanted "to fuck the shit out of" her and told her to get in the back seat. She left her purse and phone in the front seat and climbed into the back seat. The man got into the back seat with her, pointed the gun at her head, and told her to pull down her pants and get on all fours. D.H. complied. She asked him to use a condom, but he refused, telling her, "It's okay, I don't have anything."

The man put his penis into her vagina. "Then he took it out and he put it in my anus and then he took it out and then he told me to get up and turn around and put it in my mouth." The man ejaculated in D.H.'s mouth, made her swallow, and told her to get out of the car. She left her belongings in the front seat and walked home. The assailant drove away down Avalon. D.H. estimated the entire assault took about 10 minutes.

Despite her testimony regarding defendant's directive that she orally copulate him, D.H. also stated that the man did not say anything "during it"; "all the words were spoken before, on the car ride over." He asked D.H. if she had ever "done anal" before, and,

3

when she said no, told her, "we're going to do it today." He also said, "Don't worry I've done this before," and told her, "You might like it."

When D.H. got home, she called her boyfriend. He told her to call 911, which she did. The prosecutor played a recording of the call for the jury.

Los Angeles Police Department (LAPD) officer Hector Beas testified that he responded to D.H.'s 911 call. After taking an initial report, he took D.H. to a medical treatment facility in Santa Monica for a "SART" exam.

Nurse Kari Ross testified that she examined D.H. Ross observed a perineal laceration consistent with penile penetration and forced trauma. She collected swabs from D.H.'s "mouth, the vaginal area, the cervical area, anal, and external vaginal" and gave them to law enforcement.

LAPD criminalist Sherillelynn Cruz analyzed D.H.'s oral swab. She compared the swab to a DNA sample taken from defendant and concluded that the "DNA profile obtained from the oral swab of D.H. was a mixture of at least two people and Michael Tamayo was included as a possible contributor to the DNA profile." Cruz testified that the "combined probability of inclusion" was one in 70,000.

D.H. later selected defendant's picture from a photographic lineup, stating that his photo most closely resembled her attacker.

### 2. Victim C.E.

Like D.H., C.E. was 22 years old at the time of trial. She testified that on August 12, 2013, she was walking home alone down Broadway. Near the intersection of Broadway and 84th Street, she saw someone in a Chevrolet Tahoe trying to get her attention. She ignored the overture and kept walking south on Broadway. As C.E. approached 95th Street, she saw the same Tahoe parked by a tree. A man wearing a black hoodie, camouflage pants, and new red and black Jordan sneakers was standing on the corner near the car. She identified the man in court as defendant.

When C.E. got "within arms distance" of defendant, she heard a gun pop. He grabbed her around the back of the neck and told her that he would shoot her if she tried anything. Defendant walked C.E. to the Tahoe and told her to get in the passenger seat.

4

He then walked around the Tahoe and got into the driver's seat. Defendant drove north on Broadway. During the drive, defendant told C.E., "I'm going to fuck the shit out of you."

Defendant parked in an alley. He asked C.E. if she "sucked dick," and she told him no. Defendant responded, "Well, you're going to do it today." He instructed her to put her purse and cell phone on the floor and climb into the back seat.

Defendant joined C.E. in the back seat and told her to orally copulate him. After she did that for a few minutes, he told her to pull her pants down and bend over. C.E. complied, and defendant inserted his penis into her vagina. After "awhile," defendant asked C.E. if she had ever had anal sex before. When she told him she had not, he said, "'Well, you're going to do it today.'" He then removed his penis from her vagina and put it in her anus. "He went from my anus to my vagina about three times and after that he ejaculated."

Defendant then told C.E. to get out of the Tahoe. She asked him if she could have her belongings back. He told her, "'Either you live or you're going to be another dead bitch in the alley.'" Defendant drove away and C.E. ran down the alley and across the street. She eventually found a woman who let C.E. into her house, where she called 911. The prosecutor played a recording of the call for the jury.

During the 911 call, C.E. provided the same description of defendant that she gave in court. She also told the operator that her purse and cell phone were still in his truck.

LAPD officer Roger Cancio responded to the 911 call and took C.E. to a rape treatment center in Santa Monica. Nurse practitioner Madelynn Finkelstein performed a SART exam. Finkelstein testified that she found "several very deep lacerations around the anal area," which were consistent with penile penetration and blunt force trauma. Finkelstein collected swabs from C.E. and gave them to Officer Cancio.

LAPD criminalist Forrest Yumori testified that he analyzed swabs taken from C.E.'s anal area. Yumori "was able to determine that there was a single male profile which matched the DNA profile that [he] got from Michael Tamayo. The epithelial cell fraction of that same swab was a mixture of the victim and Michael Tamayo." According

5

to Yumori, the samples were "a perfect match" to defendant. The probability of finding another person with the same DNA profile was one in four sextillion, which is "a four followed by 21 zeros."

LAPD detective Michael Fairchild testified that he spoke to C.E. on August 13, 2013 and learned that she had lost her cell phone. Fairchild obtained a search warrant for the phone's global positioning satellite (GPS) information and tracked the phone to a residence on East 110th Street. He traveled to the residence and saw a green Tahoe parked outside. LAPD detective Kimberly Delosh testified that she drove C.E. by the area, and she and C.E. both testified that C.E. identified the Tahoe as the one in which her sexual assault occurred.

Fairchild enlisted the assistance of another LAPD officer, who later conducted a traffic stop on the vehicle and called Fairchild to the scene. Fairchild testified that the driver of the stopped Tahoe was wearing red and black Jordan sneakers, the same shoes C.E. had described. Fairchild identified the man in court as defendant.

While outside the Tahoe, Fairchild dialed C.E.'s phone number. He heard a ringing from inside the Tahoe and observed a blue cell phone in the center console. Fairchild testified that C.E. had told him that her cell phone case was royal blue. Delosh testified that a pair of camouflage pants was found in the very back of the Tahoe. Detectives later obtained a search warrant for defendant's house and recovered a black BB gun that looked like a real gun.

Delosh testified that she brought C.E. to the scene of the traffic stop to conduct a field show-up. C.E. identified defendant as the man who assaulted her. According to Delosh, C.E. immediately said, "'That's him, that's him,'" lay down in a fetal position, and began crying uncontrollably.

**B. Defense Case**

Defendant testified on his own behalf. In April 2013, he was 20 years old. He lived in Los Angeles with his "baby mama," Joeisha McDaughtery, near the intersection of Avalon and 91st Street. McDaughtery gave birth to defendant's child in September

6

2013. During her pregnancy, McDaughtery was ill and did not feel like having sex. Defendant accordingly solicited prostitutes to fulfill his sexual desires.

On April 4, 2013, defendant was driving near 108th and Broadway when he saw D.H. walking down the street. Defendant followed her for about a block before pulling his car alongside of her and asking her how she was doing. D.H. asked defendant if he was a pimp. When he said no, she asked him to reach out of the car and touch her genitals. After defendant complied with this request, D.H. walked around the car and got into the passenger seat.

Defendant started driving the car down 108th Street, and he and D.H. negotiated a price of $80 for oral copulation and vaginal sex. Defendant asked D.H. if she "did anal," and she said she would for an additional $20. Defendant parked the car on a residential street, D.H. got out a condom, and they "hopped into the back seat" so she could orally copulate him. After a few minutes, D.H. put the condom on defendant and positioned herself on all fours "on her own." Defendant began having vaginal sex with D.H. He then removed his penis, spit on the condom, and proceeded to engage in anal sex with D.H. for about five to ten minutes. He inserted his penis into D.H.'s anus slowly, because he did not want to hurt her. After defendant ejaculated, D.H. removed the condom and threw it out the window of the car. She asked defendant for her money. Instead of paying her, defendant took out a BB gun and told her to get out of the car. D.H. complied, and defendant drove away with her purse and cell phone still in the front seat. Defendant later disposed of D.H.'s belongings "in a random trash can."

On August 13, 2013, defendant was driving down Broadway with his windows down when he noticed C.E. walking down the street and yelling into her cell phone. Defendant believed that she was "a working girl getting into it with her pimp or something like that." Defendant pulled over to the side of the road, and C.E. approached the open passenger-side window. She got into the car after defendant assured her he was not a pimp.

Defendant asked C.E. what she was doing out so late at night, and she told him that she was working. They agreed upon a price of $120 for oral copulation, vaginal sex,

7

and anal sex, and defendant drove to an alley.  Defendant engaged in the agreed-upon sex acts with C.E. in the alley.  When C.E. asked defendant for her money, he told her to get out of the car.  After C.E. exited the car, she asked for her purse and cell phone.  Defendant refused her request and drove away.  He threw away the purse and wallet after searching them for money.

LAPD officer Russell Kumagai testified that he worked as an undercover vice investigator responsible for enforcing prostitution laws.  He testified that it is common for a prostitute to ask a potential client to touch her genitals before she agrees to do business with him; this is a means of detecting law enforcement officers.

## PROCEDURAL HISTORY

On January 15, 2014, a grand jury returned a 17-count indictment against defendant, alleging that he committed sex and theft crimes against four different women between April and August 2013.  The indictment alleged that defendant kidnapped D.H. to rape her (Pen. Code, § 209, subd. (b)(1); count 1);[1] forcibly raped (§ 261, subd. (a)(2); count 2), sodomized (§ 286, subd. (c)(2)(A); count 3), and orally copulated her (§ 288a, subd. (c)(2)(A); count 4); and robbed her (§ 211; count 14).  The indictment included identical allegations as to C.E.  It alleged that defendant kidnapped C.E. to rape her (§ 209, subd. (b)(1); count 8), forcibly raped (§ 261, subd. (a)(2); count 9), sodomized (§ 286, subd. (c)(2)(A); count 10), and orally copulated her (§ 288a, subd. (c)(2)(A); count 11); and robbed her (§ 211; count 17).  The indictment also included similar allegations pertaining to two other women, L.J. and R.W. It alleged that defendant kidnapped L.J. to rape her (§ 209, subd. (b)(1); count 5), forcibly raped her (§ 261, subd. (a)(2); count 6), and forcibly orally copulated her (§ 288a, subd. (c)(2)(A); count 7).  It also alleged that defendant forcibly raped (§ 261, subd. (a)(2); count 12) and sodomized R.W.  (§ 286, subd. (c)(2)(A); count 13).  The indictment alleged that defendant robbed L.J. and R.W. (§ 211; counts 15 and 16).

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

8

The forcible sex offenses against D.H., C.E., and L.J. each included two special circumstance allegations. The first provided: "It is further alleged, within the meaning of Penal Code Section 667.61(a) and (e), . . . that the following circumstances apply: The target in the present case or cases committed an offense specified in 667.61(e), against more than one victim." The second stated: "It is further alleged, within the meaning of Penal Code Section 667.61(a) and (d), . . . that the following circumstances apply: The target in the present case or cases committed an offense specified in 667.61(d), against more than one victim." The indictment did not allege any other circumstances relevant to section 667.61, subdivisions (d) or (e), such as kidnapping.

The jury found defendant guilty as charged on all five counts pertaining to C.E. It also found true that the forcible rape against C.E. alleged in count 9 "was committed against more than one victim and the victim was kidnapped within the meaning of Penal Code Section 667.61(a) and (d)." However, the jury found not true the separate allegation that the forcible rape against C.E. "was committed against more than one victim within the meaning of Penal Code Section 667.61(a) and (e)." The jury did not make any additional findings.

The jury's verdicts as to the remaining women were more complicated. As to D.H., the jury found defendant guilty of robbery as charged. On the other four counts pertaining to D.H., however, the jury found defendant guilty of lesser included offenses. It found defendant guilty of ordinary kidnapping (§ 207) rather than kidnapping to commit rape (§ 209, subd. (b)(1)), and three counts of assault with intent to commit rape, sodomy, and oral copulation (§ 220, subd. (a)(1)) rather than the forcible rape, sodomy, and oral copulation offenses that were charged. Similarly, as to L.J., the jury found defendant guilty as charged only as to the robbery. It found defendant guilty of the lesser included offense of misdemeanor assault (§ 240) on both the forcible rape and oral copulation charges, and acquitted defendant of kidnapping to commit rape against L.J. The jury acquitted defendant of forcibly raping and sodomizing R.W. It also acquitted defendant of robbing R.W., but found him guilty of the lesser included offense of grand

9

theft person (§ 487, subd. (c)). The court reclassified this latter conviction to a misdemeanor pursuant to Proposition 47.

The trial court sentenced defendant to 25 years to life on base count 9, the forcible rape of C.E. The trial court explained that the enhanced sentence on this count was mandatory under section 667.61, subdivisions (a) and (d), "because there were multiple victims involved in this case." The trial court sentenced defendant to seven years to life on count 8, kidnapping to commit rape against C.E., to run consecutive to the sentence on count 9. The trial court sentenced defendant to the high term of eight years on the other two forcible sex offenses against C.E. (counts 10 and 11), and ordered those sentences to run consecutive to one another and to counts 8 and 9. The court further ordered all of those sentences to run consecutively to high-term sentences of six years on counts 2, 3, and 4, the assaults against D.H. The court explained that consecutive sentences on these counts were required under section 667.6, subdivision (d), because "there were different victims and/or the defendant had a meaningful opportunity to reflect on his conduct between assaults where they were involving the same victim, counts 2, 3, and 4. Also, as to counts 10 and 11 the defendant had a reasonable opportunity to reflect on his conduct and proceeded to go forward with the commission of the offenses." The total sentence on these seven counts was 66 years to life.

The trial court sentenced defendant to one year, one-third the midterm, on each of the three robbery convictions (counts 14, 15, and 17). It also sentenced defendant to one year, eight months, one-third the five-year midterm, for kidnapping D.H. (count 1). The court ordered all of those terms to run consecutively. The trial court sentenced defendant to one year in county jail, with credit for time served, on the reduced petty theft count against R.W. (count 16), and 180 days in county jail, with credit for time served, on each of the two misdemeanor assaults against L.J. (counts 6 and 7). Defendant's total sentence thus was 70 years, eight months to life in state prison. The trial court also imposed restitution fines, a "convictions assessments fee of $30 for each conviction for a total of $450," and a "court operations fee of $40 for each conviction in the amount of $600 pursuant to Penal Code section 1465.8." After consulting with both the prosecutor and

10

defense counsel, the trial court awarded defendant 555 days of credit for the time he had served in custody, plus an additional 83 days of conduct credit, for a total credit of 638 days.

Defendant timely appealed.

## DISCUSSION

### A.    Full and Consecutive Sentences on Counts 2, 3, 4, 10, and 11

Defendant first contends that the trial court erred by imposing full and consecutive sentences pursuant to section 667.6, subdivision (d) on the three assault convictions as to D.H. (counts 2, 3, and 4) and on the forcible sodomy and oral copulation convictions as to C.E. (§§ 286, subd. (c)(2)(A) and 288a, subd. (c)(2)(A); counts 10 and 11). He argues that no reasonable trier of fact could have found that he had a reasonable opportunity to reflect upon his actions before engaging in each instance of sexually assaultive behavior. We disagree and affirm the sentences.

#### 1.    *Governing Law*

Section 667.6, subdivision (d) requires a trial court to impose consecutive sentences for certain enumerated sex offenses, including forcible sodomy, forcible oral copulation, and assault with intent to commit a specified sex offense, "if the crimes involve separate victims or involve the same victim on separate occasions." (§ 667, subds. (d), (e)(4), (e)(7), (e)(9).) [2] The trial court is responsible for determining whether

---

[2] The Attorney General contends that defendant forfeited this claim by failing to object to the manner in which the trial court exercised its sentencing discretion. We are not persuaded. Section 667.6, subdivision (d) is not a discretionary provision. It requires a trial court to impose full consecutive terms if the defendant committed enumerated sexual offenses against separate victims or against a single victim on separate occasions. Section 667.6, subdivision (c), by contrast, vests the trial court with the discretion to impose full consecutive sentences if the sexual offenses involve a single victim or occur on a single occasion, provided it articulates its reasons for doing so. (See § 667.6, subd. (c); *People v. Quintanilla* (2009) 170 Cal.App.4th 406, 411.) The trial court here very explicitly relied upon subdivision (d); it did not exercise its discretion under subdivision (c). If that reliance was improper, as defendant argues here, defendant's sentence would be unauthorized. (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1091.) Claims that a sentence is unauthorized are not subject to the forfeiture rule. (*Ibid.*)

11

crimes against a single victim occurred on separate occasions. (§ 667.6, subd. (d); Cal. Rules of Court, Rule 4.426(a)(2); *People v. Groves* (2003) 107 Cal.App.4th 1227, 1230.) In making its determination, "the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (§ 667.6, subd. (d).)

A finding of separate occasions "does not require a change in location or an obvious break in the perpetrator's behavior." (*People v. Jones* (2001) 25 Cal.4th 98, 104.) "'[A] forcible violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter.'" (*Ibid.*) On the other hand, various acts may be considered a single encounter where the defendant "simply did not cease" his or her sexually assaultive behavior and therefore "could not have 'resumed' sexually assaultive behavior." (*People v. Pena* (1992) 7 Cal.App.4th 1294, 1316 (*Pena*), citing *People v. Corona* (1988) 206 Cal.App.3d 13, 18 (*Corona*).)

Our review of the trial court's finding regarding separate occasions is deferential. We reverse "only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior." (*People v. Garza*, *supra*, 107 Cal.App.4th at p. 1092.)

### 2. *Analysis*

The trial court found that all of the sex offenses defendant perpetrated against D.H. and C.E. occurred on separate occasions because defendant had a meaningful opportunity to reflect on his conduct between each act. The record supports the trial court's conclusion as to both victims.

D.H. testified that defendant directed her to get on all fours and began his assault by inserting his penis into her vagina. After some amount of time, defendant removed his

penis from her vagina and inserted it into her anus. He then "told [her] to get up and turn around and put it in [her] mouth." Although D.H. did not clarify how long each of the assaults took or what, if anything, transpired between them, defendant testified that he lubricated his penis with saliva between the vaginal and anal assaults and made sure to move slowly so as not to hurt D.H. A reasonable trier of fact could conclude that defendant's admitted ability to make deliberate calculations regarding lubrication and speed demonstrated that he also had a reasonable opportunity to reflect upon his actions after finishing the vaginal assault and before initiating the anal assault. A reasonable trier of fact likewise could conclude that defendant had a reasonable opportunity to reflect on his conduct a second time when he ordered D.H. to reposition herself to perform oral copulation.

A reasonable trier of fact likewise could have concluded that defendant had reasonable opportunities to reflect upon his various assaults against C.E. She testified that defendant initially ordered her to orally copulate him. He then ordered her to remove her pants and bend over into a different position in the back seat of his vehicle so that he could rape her. Prior to sodomizing C.E., defendant took the time to ask her whether she had ever engaged in anal sex. Upon learning that she had not, defendant callously informed C.E. that she was going to do so today before subjecting her to the sodomy. C.E. also testified that defendant repeatedly withdrew and inserted his penis into different orifices; it would not be unreasonable for a trier of fact to conclude that he had a reasonable opportunity to reflect upon and cease his actions before doing so.

We are not persuaded otherwise by defendant's reliance on *Pena*, *supra*, 7 Cal.App.4th 1294. In *Pena*, the defendant pushed the victim onto a bed, raped her, "got off of her, twisted her by the legs violently, and orally copulated her." (*Pena*, *supra*, 7 Cal.App.4th at p. 1299.) The Court of Appeal held that the trial court erred in imposing full consecutive sentences under section 667.6, subdivision (d). (*Id.* at p. 1316.) The court found that the defendant did not have a reasonable opportunity to reflect between the rape and oral copulation, even though he changed positions, because the change was accomplished within a matter of seconds. (*Ibid.*) The court found that "nothing in the

13

record before this court indicates any appreciable interval between the rape and oral copulation." (*Ibid.*)

The facts surrounding the assaults in this case are distinguishable. Defendant did more than simply turn his victims over. In between the first and second offenses against D.H., he determined that lubrication would be necessary and took the time to generate saliva and place it on his penis. He further reflected on the speed of his assault and adjusted his behavior before inserting his penis into a second orifice of D.H.'s body. Defendant also told D.H. how he wanted the third assault to proceed and paused so that she could reposition herself in accordance with his directions. Similarly, after forcibly raping C.E., defendant stopped to inform C.E. that she would be engaging in sodomy today. He also dictated how she was to reposition herself, and waited for her to remove her pants. It was reasonable for the trial court to conclude from this evidence that defendant ceased and resumed his assaultive behavior.

Defendant also relies on *Corona*, *supra*, 206 Cal.App.3d 13. In *Corona*, as here, the defendant sexually assaulted a victim in his car. He digitally penetrated her vagina, orally copulated her, and then raped her. He left the car for five minutes before returning and raping her a second time. (*Id.* at p. 15.) The trial court imposed full consecutive sentences for each sexual offense pursuant to section 667.6, subdivision (d). (*Id.* at p. 16.) Defendant challenged the full and consecutive sentences on appeal. (*Ibid.*) The Attorney General conceded that the consecutive sentences for two of the crimes committed before he left the car were improper. (*Id.* at pp. 16, 18.) Although the *Corona* court found that the defendant had a reasonable opportunity to reflect on his actions during the five-minute break, it accepted the Attorney General's concession and held that the trial court erred in imposing full consecutive sentences under section 667.6, subdivision (d) for the digital penetration and oral copulation offenses because there was "no evidence of any interval 'between' these sex crimes affording a reasonable opportunity for reflection." (*Id.* at pp. 17-18.)

The similarity between this case and *Corona* does not extend beyond the general nature and location of the crimes. Here, as discussed above, there was ample evidence

14

from which to conclude that the defendant made a series of deliberate decisions and engaged in a series of distinct acts rather than one uninterrupted sexual assault. Additionally, unlike *Corona*, the Attorney General did not concede that the assaults occurred on a single occasion.

The analysis set forth in *People v. Irvin* (1996) 43 Cal.App.4th 1063, 1070-1071 bears repeating here. "To the extent the facts of *Corona* [and] *Pena* . . . suggest a finding of 'separate occasions' requires a change of location or an obvious break in a perpetrator's behavior, we disagree. Subdivision (d) provides otherwise. What the trial court must decide is whether 'the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior.' A violent sexual assault cannot and should not be considered in the same light as sexual acts shared between willing participants. Consensual sex may include times when the participants go back and forth between varied sex acts, which they consider to be one sexual encounter. By contrast, a forcible violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter. Such a sexual assault consisting of multiple types of sex acts committed against the victim is not motivated by sexual pleasure. Instead, it is frequently intended to degrade the victim. Sexual acts, such as those committed by defendant, are the antithesis of a consensual sexual encounter and should not be viewed the same way. Therefore, at sentencing a trial court could find a defendant had a 'reasonable opportunity to reflect upon his or her actions' even though the parties never changed physical locations and the parties merely changed positions." Given the evidence in this case, a reasonable person could have decided that defendant had a reasonable opportunity to reflect upon his actions before resuming his attacks on D.H. and C.E. The trial court did not err in sentencing defendant to full and consecutive sentences on counts 2, 3, 4, 10, and 11.

**B.      "One Strike" Sentence on Count 9**

The trial court sentenced defendant to 25 years to life on count 9, the forcible rape of C.E., "because there were multiple victims in this case, pursuant to Penal Code section 667.61(a) and (d)." Defendant contends that this sentence was in error because he was

only convicted of raping a single victim, C.E. The Attorney General concedes that C.E. was the only victim against whom defendant perpetrated an offense listed in section 667.61, subdivision (c), but argues that the sentence nevertheless was proper in light of the jury's finding that C.E. was kidnapped within the meaning of section 667.61, subdivisions (a) and (d). Defendant responds that the kidnapping finding cannot support the sentence because it was not alleged in the indictment.[3] Defendant urges us to reverse the sentences on both counts and remand for resentencing.

We accept the Attorney General's concession regarding the jury's multiple victim finding. We further conclude that defendant must be resentenced on count 9, because the prosecutor neither pleaded the kidnapping circumstance in the indictment nor sought leave to amend the indictment to include the circumstance at trial.

1.    *Governing Law*

Section 667.61, known as the "One Strike" law, is an alternative, harsher sentencing scheme that applies to specified felony sex offenses. (*People v. Anderson* (2009) 47 Cal.4th 92, 102.) "The purpose of the One Strike law is 'to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction,' 'where the nature or method of the sex offense "place[d] the victim in a position of elevated vulnerability.""" (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 186.) "For the sex crimes falling within its reach (§ 667.61, subd. (c) [enumerating crimes]), a first-time offense can result in one of two heightened sentences. The sentence will be 15 years to life if the jury finds (or the defendant admits) one or more of the 'circumstances' listed in section 667.61, subdivision (e). (§ 667. 61, subds. (b) & (e).) The sentence will be 25 years to life if the jury finds (or the defendant admits) either (1)

_____

[3] Defendant also argues that the jury was not properly instructed on the kidnapping circumstance, that the kidnapping circumstance cannot apply without further resentencing because he was sentenced for kidnapping on count 8 (see § 209, subd. (d) ["a person may not be punished under subdivision (b) for the same act that constitutes a violation of both subdivision (b) and Section 667.61"] ), and that his trial counsel rendered ineffective assistance to the extent that she failed to preserve any of his arguments. Because we conclude that defendant's first argument is both correct and preserved, we do not address his alternative contentions.

*two* of the 'circumstances' listed in section 667.61, subdivision (e), or (2) *one* of the more aggravated 'circumstances' listed in section 667.61, subdivision (d). (§ 667.61, subds. (a), (d), & (e).)" (*People v. Perez* (2015) 240 Cal.App.4th 1218, 1223 (*Perez*).)

Forcible rape, sodomy, and oral copulation are among the offenses specified in subdivision (c). (§ 667, subds. (c)(1), (c)(6), (c)(7).) As is pertinent here, the circumstances enumerated in subdivision (d) include "The defendant kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense in subdivision (c)." (§ 667.61, subd. (d)(2).) Subdivision (e) includes two circumstances pertinent here: "Except as provided in paragraph (2) of subdivision (d), the defendant kidnapped the victim of the present offense in violation of Section 207, 209, or 209.5" (§ 667.61, subd. (e)(1)), and "The defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim." (§ 667.61, subd. (e)(4).)

"The One Strike law specifically spells out what the People must do in order to invoke its greater penalties." (*Perez*, *supra*, 240 Cal.App.4th at p. 1223.) Section 667.61, subdivision (o) states, "The penalties provided in this section shall apply only if the existence of any circumstance specified in subdivision (d) or (e) is alleged in the accusatory pleading pursuant to this section, and is either admitted by the defendant in open court or found to be true by the trier of fact." Another provision, section 667.61, subdivision (f), reiterates that the circumstances must be "pled and proved." (See *People v. Mancebo* (2002) 27 Cal.4th 735, 744-745 (*Mancebo*).)

The Supreme Court has interpreted these provisions[4] strictly. In *Mancebo*, the Court concluded that the prosecution must allege, in the operative charging document, "which qualifying circumstance or circumstances are being invoked for One Strike sentencing." (*Mancebo* at p. 752; accord *People v. Wutzke* (2002) 28 Cal.4th 923, 930;

---

[4] The *Mancebo* court interpreted former section 667.61, subdivisions (f) and (i). Former subdivision (f) was substantively identical to current subdivision (f), and former subdivision (i) was substantively identical to current subdivision (o).

17

*Perez*, *supra*, 240 Cal.App.4th at p. 1223.) The Supreme Court determined such pleading is mandated not only by the language of the One Strike law but also by the "cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his [or her] crimes." (*Mancebo*, *supra*, 27 Cal.4th at p. 747.) "[T]he fair notice afforded by that pleading requirement may be critical to the defendant's ability to contest the factual bases and truth of the qualifying circumstances," enables the defendant and his or her counsel to assess his or her potential sentence, and may inform and perhaps motivate plea bargaining. (*Id.* at pp. 746, 752; *Perez*, *supra*, 240 Cal.App.4th at p. 1223.) In short, defendants must receive "fair notice of the qualifying statutory circumstance or circumstances that are being plead, proved, and invoked in support of One Strike sentencing." (*Mancebo*, *supra*, 27 Cal.4th at p. 754.) "[U]nder *Mancebo*, what matters is notice by pleading, not actual notice." (*Perez*, *supra*, 240 Cal.App.4th at p. 1225.) Thus, the "straightforward rule" applicable to the One Strike law is that "The People must allege the specific One Strike law circumstances it wishes to invoke as to each count it seeks to subject to the One Strike law's heightened penalties." (*Id.* at p. 1227.)

### 2. *Multiple Victim Circumstance*

The indictment alleged that defendant "committed an offense specified in 667.61(d), against more than one victim," and that he "committed an offense specified in 667.61(e) against more than one victim."[5] The only verdict form in the record that asked the jury to make a finding on either of these allegations was that pertaining to count 9. The jury found not true "that the above offense was committed against more than one victim within the meaning of Penal Code Section 667.61(a) and (e)." It found true "that the above offense was committed against more than one victim and the victim was kidnapped within the meaning of Penal Code Section 667.61(a) and (d). The trial court sentenced defendant to a term of 25 years to life pursuant to section 667.61, subd. (a) based on the multiple victim finding.

---

[5] Only subdivision (e) includes a multiple victim circumstance. (Compare § 667.61, subd. (d) with § 667.61, subd. (e).)

The Attorney General concedes that the trial court's stated basis for the sentence is not supported by the record. That is, although it was pleaded, it was not "proved" as required by the One Strike law. We agree. Although defendant was charged with committing offenses listed in section 667.61, subdivision (c) against four victims, he was only convicted of committing enumerated offenses against one victim, C.E. The lesser included sex offenses he was convicted of committing against victims D.H. and L.J. are not listed in section 667.61, subdivision (c). The trial court's reliance upon the multiple victim circumstance to apply the One Strike law was error.

### 3. *Kidnapping Circumstance*

As noted above, the jury found true that victim C.E. "was kidnapped within the meaning of Section 667.61(a) and (d)." The Attorney General argues that this finding on kidnapping, which was made pursuant to jury instructions and verdict forms approved by defendant, supports the trial court's invocation of the One Strike law. Defendant contends that the kidnapping finding cannot save the sentence, because the kidnapping circumstance was not alleged in the indictment. We conclude that defendant has not forfeited this argument, which is correct on the merits.

The indictment did not allege a kidnapping circumstance on any of the sex offenses charged against any of the four women. It charged defendant with the aggravated kidnapping of D.H., L.J., and C.E., but those charges did not satisfy the statutory pleading requirements as interpreted by *Mancebo*. As noted above, "under *Mancebo*, what matters is notice by pleading, not actual notice." (*Perez*, *supra*, 240 Cal.App.4th at p. 1225.) Thus, in *Mancebo*, an information that alleged crimes against different victims but did not allege a multiple victim circumstance or reference the appropriate subdivision of section 667.61 "failed to put defendant on notice that the People, for the first time at sentencing, would seek to use the multiple victim circumstance to secure indeterminate One Strike terms under section 667.61, subdivision (a)." (*Mancebo*, *supra*, 27 Cal.4th at p. 745.) "Adequate notice can be conveyed by a reference to the description of the qualifying circumstance (e.g., kidnapping, tying or binding, gun use) in conjunction with a reference to section 667.61 or, more specifically,

19

667.61, subdivision (e), or by reference to its specific numerical designation under subdivision (e), or some combination thereof." (*Id.* at p. 754.) It cannot be conveyed by virtue of other crimes alleged in the charging document. The separate kidnapping charges in the indictment therefore did not give defendant the requisite notice.

The Attorney General suggests that the indictment effectively was amended by the jury instructions and verdict forms, both of which referred to a kidnapping circumstance. The Attorney General further asserts that "under the circumstances appellant had fair notice that the prosecution was pursuing kidnapping as a qualifying circumstance under section 667.61." The *Perez* court rejected similar arguments on similar facts. We agree.

In *Perez*, the prosecution alleged One Strike circumstances on some counts, but did not allege any circumstances on a count of forcible oral copulation. (*Perez*, *supra*, 240 Cal.App.4th at p. 1225.) The prosecution argued that "the trial court actually amended the information to allege the kidnapping and use of a deadly weapon circumstances as to the forcible oral copulation count because the trial court told the jury as much during voir dire." (*Ibid.*) Indeed, "the court read the information [to the jury] as if it already had been amended." (*Ibid.*) However, the information was not in fact amended; there was "nothing in the record to indicate that the prosecutor ever asked the trial court to amend the information," and the Attorney General did not argue on appeal that any such request had been made. (*Ibid.*) The *Perez* court concluded that the prosecution's decision not to amend the information was fatal to the unpleaded One Strike circumstance. (See *ibid.*) It reasoned that the prosecution could have sought leave to amend the indictment to include a kidnapping circumstance allegation. (See *ibid.*, citing § 1009 and *People v. Miralrio* (2008) 167 Cal.App.4th 448, 458-459 [allowing amendment to add One Strike allegation].) The court characterized the prosecution's decision not to take advantage of this opportunity as a discretionary one akin to a decision not to allege the One Strike circumstance in the first place. (See *Perez*, *supra*, 240 Cal.App.4th at p. 1225.)

These facts are closely analogous to the facts of this case. Here, the indictment alleged the multiple victim circumstance but did not mention the kidnapping

20

circumstance. Just as the trial court in *Perez* informed the jury that the forcible oral copulation count carried One Strike circumstance allegations, the trial court here informed the jury that the forcible rape of C.E. (and several other offenses) carried a kidnapping allegation under section 667.61, subdivision (e)(1). The verdict form for the forcible rape alleged in count 9 also asked the jury to decide whether "the above offense was committed against more than one victim and the victim was kidnapped within the meaning of Penal Code Section 667.61(a) and (d)." However, the prosecution never sought leave to amend the indictment to reflect these belated allegations. As the court explained in *Perez,* "what matters is notice by pleading, not actual notice." (*Perez,* *supra*, 240 Cal.App.4th at p. 1225.) That notice was absent here, just as it was in *Perez.* Thus, just as in *Perez,* the prosecution failed to adhere to the "straightforward rule" that it "must allege the specific One Strike law circumstances it wishes to invoke as to each count it seeks to subject to the One Strike law's heightened penalties."

The Attorney General contends that defendant "forfeited any possible claim concerning any purported lack of a more clear allegation of the kidnapping circumstance in the indictment" by approving jury instructions and verdict forms that included the circumstance. Defendant responds that his failure to object below does not effect a forfeiture because a One Strike sentence imposed absent a properly pleaded circumstance allegation is an "unauthorized sentence" to which forfeiture is inapplicable.

"[L]egal error resulting in an unauthorized sentence [that] commonly occurs where the court violates mandatory provisions governing the length of confinement" is outside the scope of the rule requiring timely objection to improper exercises of sentencing discretion. (*People v. Scott* (1994) 9 Cal.4th 331, 354; *Mancebo, supra*, 27 Cal.4th at p. 749, fn. 7.) A One Strike sentence imposed in violation of section 667.61's pleading requirements and defendant's due process rights is an unauthorized sentence. (See *Mancebo, supra*, 27 Cal.4th at pp. 743, 749 & fn. 7.) We note that the Supreme Court reached the merits in *Mancebo* even though the defendant did not object. (See *Mancebo, supra*, 27 Cal.4th at p. 758 (Brown, J., dissenting.) Moreover, the *Mancebo* court "disapproved a harmless error analysis, even though the defendant had, in fact, been

21

convicted of qualifying crimes against more than one victim." (*People v. Botello* (2010) 183 Cal.App.4th 1014, 1028.) The error here, while avoidable, cannot be considered forfeited or harmless. The prosecution did not plead and prove a kidnapping circumstance, and the trial court did not mention a kidnapping circumstance when it sentenced defendant under the One Strike law based on the multiple victim circumstance. The sentence on count 9 must be vacated, and the matter remanded for resentencing on that count.

## C. Agreed Errors in Abstract of Judgment

### 1. *Incorrect Offenses of Conviction*

In counts 1, 2, 3, and 4, the jury found defendant guilty of lesser included offenses rather than the offenses with which he was charged. The abstract of judgment states that defendant was convicted of the charged offenses on those counts, however. Both parties agree that the abstract of judgment is incorrect and should be corrected. We agree.

"An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Accordingly, "[c]ourts may correct clerical errors at any time, and appellate courts (including this one) that have properly assumed jurisdiction of cases" (*ibid.*), may order correction of an abstract of judgment that does not accurately reflect the oral pronouncement of sentence (*id.* at pp. 185-188). We direct the trial court to correct the abstract of judgment to reflect the proper offenses of conviction on counts 1, 2, 3, and 4, and to forward a copy of the corrected abstract to the Department of Corrections and Rehabilitation.

### 2. *Incorrect Assessments*

The trial court imposed "a court operations fee of $40 for each conviction in the amount of $600 pursuant to section 1465.8," and a "convictions assessment fee of $30 for each conviction for a total of $450." The abstract of judgment includes a court operations assessment fee of $1800 "per PC 1465.8" and a convictions assessment fee of $1350 pursuant to Government Code section 70373. Defendant argues, and the Attorney

22

General agrees, that both the trial court's calculation of the fees and the abstract of judgment's reporting of them are incorrect and must be corrected. We agree.

Defendant was charged with 17 offenses and convicted of 14 offenses. The court operations assessment fee authorized by section 1465.8, subdivision (a)(1) is $40 for "every conviction for a criminal offense." Defendant accordingly should have been assessed a fee of $40 on each of the 14 convictions he sustained, for a total of $560. Similarly, Government Code section 70373, subdivision (a)(1) requires the trial court to impose a court facilities assessment of $30 "for each misdemeanor or felony." Defendant's assessment fee under this provision thus should have been $30 times 14 offenses, or $420. The abstract of judgment must be corrected to reflect these fee amounts rather than the $1800 and $1350 it currently includes. (See *People v. Mitchell*, *supra*, 26 Cal.4th at pp. 185-188; *People v. High* (2004) 119 Cal.App.4th 1192, 1200.)

### D.     Presentence Conduct Credits

The trial court awarded defendant 83 days of presentence conduct credit. The Attorney General contends defendant was not entitled to receive any conduct credit because he received an indeterminate sentence under the One Strike law. This contention is moot in light of our conclusion that defendant's One Strike sentence must be vacated.

23

## DISPOSITION

The judgment is modified by striking the sentence imposed under the One Strike law as to count 9. The matter is remanded for resentencing on that count. The clerk of the superior court is directed to prepare an amended abstract of judgment reflecting the new sentence on count 9, the correct offenses of conviction on counts 1, 2, 3, and 4, and the correct amount of the court operations and convictions assessments. The convictions and judgment are affirmed in all other respects.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.